**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

In re: PALMDALE HILLS PROPERTY,
LLC,
                              *Debtor,*

_____

PALMDALE HILLS PROPERTY, LLC;
SCC/PALMDALE, LLC; SUNCAL
SUMMIT VALLEY, LLC; SUNCAL
EMERALD MEADOWS, LLC; SUNCAL
BICKFORD RANCH, LLC; ACTON
ESTATES, LLC; SUNCAL
COMMUNITIES I, LLC,
                              *Appellants,*

            v.

LEHMAN COMMERCIAL PAPER, INC.,
                              *Appellee.*

No. 10-60004

BAP No.
09-1101-HPaMk

OPINION

Appeal from the Ninth Circuit
Bankruptcy Appellate Panel
Hollowell, Pappas, and Markell, Bankruptcy Judges,
Presiding

Argued and Submitted
June 8, 2011—Pasadena, California

Filed August 3, 2011

Before: Betty B. Fletcher and N. Randy Smith,
Circuit Judges, and Rudi M. Brewster,
Senior District Judge.*

Opinion by Judge N.R. Smith

---

*The Honorable Rudi M. Brewster, Senior District Judge for the U.S.
District Court for Southern California, San Diego, sitting by designation.

**COUNSEL**

Paul J. Couchot (argued) and Sean Okeefe, Winthrop Couchot, P.C., Newport Beach, California, for appellants Palmdale Hills Property, LLC, et al.

Christopher R.J. Pace, Weil Gotshal & Manges, LLP, Miami, Florida (argued), Dean A. Ziehl, Pachulski Stang Ziehl & Jones LLP, Los Angeles, California, for appellee Lehman Commercial Paper, Inc.

**OPINION**

N.R. SMITH, Circuit Judge:

An automatic stay imposed by 11 U.S.C. § 362(a) bars actions that would diminish the estate of a debtor in bankruptcy (the first debtor). Therefore, if another (also a debtor in bankruptcy) wants to equitably subordinate the creditor claims of the first debtor, it must seek relief from stay from the first debtor's home bankruptcy court. We affirm the judgment of the Bankruptcy Appellate Panel (BAP).

**FACTS AND PROCEDURAL HISTORY**

**1.    The Loans**

Over several years, various Lehman entities[1] entered into

---

[1]The relevant entities are Lehman Commercial Paper, Inc. (Lehman), which is a debtor in bankruptcy proceedings in the Southern District of New York, and Lehman ALI (ALI), which owns Lehman Commercial Paper, Inc., and is not in bankruptcy.

credit agreements with the Palmdale Hills, LLC[2] entities. These agreements were secured by the properties Palmdale was developing, Palmdale's personal property, and/or equity interests in the Palmdale entities. By 2008, Palmdale owed Lehman approximately $649 million plus interest. Although three loans, the SunCal I Loan, the Ritter Ranch Loan, and the Mezzanine Loan, are the subject of this appeal, only the Ritter Ranch Loan is significant. The Ritter Ranch Loan originated from a credit agreement dated February 8, 2007 and is secured by liens on projects owned by Palmdale Hills Property, LLC and an equity interest in Palmdale Hills, LLC. As discussed below, this loan has two components: a Term Loan, which was sold to Fenway Capital, and a Revolver Loan, which was not sold.

## 2.   Bankruptcy Proceedings

Palmdale filed for chapter 11 bankruptcy in November 2008 in the Central District of California. On January 6, 2009, Palmdale began an adversary proceeding against ALI, and later Lehman, to equitably subordinate ALI's security interests, which were based on Lehman's loans to Palmdale. On January 23, 2009, Lehman filed eight motions for relief from Palmdale's stay to foreclose on the collateral securing the loans that were in default. Lehman argued that relief was warranted, because the property was declining in value. It also argued that it was entitled to relief from stay, because any reorganization plan was unfeasible. Any reorganization plan would require equitably subordinating Lehman's security interests, which was prohibited by the automatic stay in Lehman's own bankruptcy proceeding in the Southern District of New York.

---

[2]The debtors in this bankruptcy case are: Palmdale Hills Property, LLC; SCC/Palmdale, LLC; SunCal Communities I, LLC; SunCal Bickford Ranch, LLC; SunCal Emerald Meadows, LLC; SunCal Summit Valley, LLC; and Acton Estates, LLC. The cases are being jointly administered. Collectively "Palmdale."

On March 10, 2009, the California bankruptcy court denied each of the motions, holding that equitable subordination, like other defenses such as claim objection, would not violate Lehman's stay. Lehman appealed the bankruptcy court's rulings regarding the scope and application of Lehman's automatic stay to the Bankruptcy Appellate Panel for the Ninth Circuit.

### 3.   The October Order

While Lehman's appeal was pending before the BAP, Palmdale discovered that Lehman had transferred some of its loans to Fenway Capital under a Master Repurchase Agreement (MRA). Palmdale moved to strike Lehman's proofs of claim on the basis that, as neither the owner of the loans nor an agent of the creditor, Lehman had no standing to file the proofs. The California bankruptcy court considered the MRA and determined that Lehman had sold the loans to Fenway Capital. The "sold loans," for which the proofs of claim were filed, included the SunCal I Loan and Ritter Ranch Loan.[3] The court rejected Lehman's argument that the transfer was only as security. Lehman filed a motion asking the court to clarify that the sold loans did not include the revolver components of those loans. That motion is still undecided by the California bankruptcy court.

### 4.   The Motion to Dismiss

On October 20, 2009, Palmdale moved to dismiss Lehman's appeal to the BAP, claiming that (1) the bankruptcy court's finding that Lehman had sold the loans to Fenway Capital deprived Lehman of standing to appeal, because Lehman's stay would only protect Lehman's property; (2) because the stay does not protect loans Lehman no longer owns, there is no injury to redress; and (3) the appeal is moot.

---

[3]The other loans, SunCal PSV, SunCal Delta Coves, SunCal Marblehead/Heartland, SunCal Oak Valley, and SunCal Northlake, are not the subject of this appeal.

**5. The BAP Opinion**

The BAP found the appeal was not moot, because effective relief could still be granted. *Lehman Commercial Paper, Inc. v. Palmdale Hills Prop., LLC (In re Palmdale Hills Prop., LLC)*, 423 B.R. 655, 662 (B.A.P. 9th Cir. 2009). It was "not clear that all the loans [Lehman] made to [Palmdale] were the subject of the October Order." *Id.* The BAP also held that Lehman had standing under the person aggrieved test, because it had "an interest in at least one of the loans," and may have an interest "under a contractual repurchase obligation." *Id.*

The BAP finally held that, because equitable subordination seeks to minimize an otherwise allowable claim, it is an affirmative action to take control of Lehman's property and thus prohibited by Lehman's stay. *Id.* at 665 (citing *In re Enron Corp.*, 2003 Bankr. Lexis 2261 (Bankr. S.D.N.Y. Jan. 13, 2003)). Thus, before Palmdale could subordinate Lehman's claims and transfer Lehman's liens to the estate, it had to apply for relief from stay from Lehman's home bankruptcy court in the Southern District of New York. *Id.* at 668. Palmdale timely appealed to the Ninth Circuit on January 8, 2010.

**6. Palmdale's Relief From Stay Motion in the New York bankruptcy court.**

After the BAP decision, Palmdale filed a motion in the New York bankruptcy court for a determination that the stay did not apply, or in the alternative, for relief from stay. On May 17, 2010, the bankruptcy court (Judge Peck) handling Lehman's bankruptcy denied Palmdale's Motion. The court stated that "[t]he stay applies and the motion is denied," but seemed to defer its decision because of the Ninth Circuit appeal. Transcript of Hearing at 75, *In the Matter of Lehman Brothers Holdings Inc., et al.*, Nos. 08-13555 (JMP); 08-01420(JMP), (Bankr. S.D.N.Y. May 12, 2010) (hereafter Transcript of Hearing).

Palmdale appealed the denial of the relief from stay motions to the district court in New York. The district court construed the bankruptcy court's decision as not coming "to any independent conclusions as to the scope of the stay." *In re Lehman Brothers Holdings, Inc.*, 435 B.R. 122, 137 (S.D.N.Y. 2010). It noted that the written order did not mention the scope of the stay and that such a decision would conflict with the court's intent to defer to the Ninth Circuit. *Id.* The Second Circuit affirmed this interpretation. *Suncal Cmtys. I LLC v. Lehman Commercial Paper, Inc.*, 402 F. App'x. 634, 636 (2d Cir. 2010).

## DISCUSSION

### I. The BAP correctly held that Lehman had standing to appeal the bankruptcy court's finding that the automatic stay did not prevent equitably subordinating Lehman's claims.

Standing is an issue of law which we review de novo. *Mayfield v. United States*, 599 F.3d 964, 970 (9th Cir. 2010). Factual determinations underlying the standing decision are reviewed for clear error. *San Diego Cnty. Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1124 (9th Cir. 1996). We may affirm the BAP "on any ground finding support in the record." *In re Siriani*, 967 F.2d 302, 304 (9th Cir. 1992). We review the BAP decision de novo and may only reverse the factual findings of the bankruptcy court if clearly erroneous. *Id.* at 303-04. Whether Lehman satisfies the "person aggrieved" test is a question of fact that is reviewed for clear error. *Duckor Spradling & Metzger v. Baum Trust (In re P.R.T.C., Inc.)*, 177 F.3d 774, 777 (9th Cir. 1999).

### A. Article III Standing

Article III standing is a necessary component of subject matter jurisdiction. To have Article III standing, Lehman must show:

(1) it has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant;[4] and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000).

**[1]** In order to suffer an injury from the bankruptcy court's decision allowing equitable subordination, Lehman must have some interest in a claim that would be subordinated. Lehman argues that it had standing to appeal because it owned at least two of the loans related to the appeal—the Ritter Ranch Revolver Loan and the Mezzanine Loan.

Lehman cannot rely on its interest in the Mezzanine Loan (which undisputedly was not transferred to Fenway Capital by the MRA) to show that it suffered an injury in fact. Lehman represented to the court that the collateral securing the Mezzanine Loan has no value. A claim is only secured up to the value of the creditor's interest in the property, the remainder of the claim is unsecured. 11 U.S.C. § 506(a)(1). Because the value of Lehman's interest in the collateral is $0, the lien would also have no value. Therefore, the claim is effectively unsecured. As such, subordinating the claim could not affect the value of Lehman's estate.

**[2]** However, Lehman's interest in the Ritter Ranch

---

[4]In bankruptcy proceedings, the injury may also be traceable to the action of the bankruptcy court. *Sherman v. SEC (In re Sherman)*, 491 F.3d 948, 965 (9th Cir. 2007). Here, the bankruptcy court's holding would allow Palmdale to exercise control over the property of Lehman's estate through equitable subordination. A favorable decision by the BAP would prevent the subordination.

Revolver Loan, if retained, would establish Article III standing. The collateral for the combined Ritter Ranch Loan had a value of $42,900,000. Therefore, subordinating the claim and transferring the lien to the debtor would constitute an actual and concrete injury to Lehman's estate, by limiting Lehman's ability to recover the value of its collateral for that loan. The injury is traceable (1) to Palmdale, which sought equitable subordination; and (2) to the bankruptcy court's order, which would allow equitable subordination. The BAP's opinion could redress the imminent injury from subordination by prohibiting subordination without a relief from stay issued by the New York court.

Nothing in the record supports Palmdale's assertion that the Ritter Ranch Revolver Loan was transferred to Fenway Capital. The Ritter Ranch credit agreement establishes that there was both a Term loan and a Revolver loan. The proof of claim likewise shows both a Term and a Revolver loan. The O'Keefe declaration in support of Palmdale's motion to strike Lehman's proofs of claim relies on *both* the MRA *and* the confirmations to indicate which loans were transferred, how, and to whom. The only evidence cited by the bankruptcy court for its finding that the Ritter Ranch Loan was sold is "Ex. 'B-I,' Okeefe Decl." However, Exhibit D (which is the only confirmation related to the Ritter Ranch Loan), specifically indicates that the "Ritter Ranch *Term* Loan" was the only loan transferred. Further, the value of the Term Loan in the confirmation exactly matches the amount of the Term Loan in the proof of claim: $208,477,500. The Ritter Ranch Loan including the Revolver, however, has a face value of $287,252,096.31. Finally, Palmdale conceded at oral argument that it could not point to any evidence that would support the finding that the entire Ritter Ranch Loan was sold to Fenway.

## B.   Prudential Standing

[3] The prudential standing doctrine or the "person aggrieved test" provides that "[o]nly those persons who are

directly and adversely affected pecuniarily by an order of the bankruptcy court . . . have standing to appeal that order." *Fondiller v. Robertson (Matter of Fondiller)*, 707 F.2d 441, 442 (9th Cir. 1983). We generally do not invoke this doctrine "in instances in which the appellant was the party that brought the motion at issue on appeal. Instead, we have invoked it when the appellant is a party other than the moving party." *In re Sherman*, 491 F.3d at 957 n.8. Here, Lehman brought the motion for relief from stay that was on appeal to the BAP, therefore, it has prudential standing.

## II.    The BAP correctly determined the appeal was not moot.

"The party asserting mootness has a heavy burden to establish that there is no effective relief remaining for a court to provide." *Pintlar Corp. v. Fidelity and Casualty Co. of N.Y. (In re Pintlar Corp.)*, 124 F.3d 1310, 1312 (9th Cir. 1997). Palmdale has not met that burden. Because Lehman owns the Ritter Ranch Revolver Loan, the BAP's opinion preventing equitable subordination was effective relief from the bankruptcy court's decision.

## III.    The BAP correctly determined that Lehman's automatic stay prevented Lehman's claims from being subordinated.

[4] In order to protect the estate from being depleted by creditors' lawsuits and seizures of property and provide the debtor breathing room to reorganize, 11 U.S.C. § 362(a) imposes an automatic stay. *White v. City of Santee (In re White)*, 186 B.R. 700, 704 (B.A.P. 9th Cir. 1995). To accomplish these goals, § 362 prohibits (1) commencing or continuing actions against the debtor that began or could have begun before the bankruptcy was filed, or to recover a pre-petition claim against the debtor; and (2) "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C.

§ 362(a)(1) & (3). We review de novo the scope or applicability of the automatic stay under the Bankruptcy Code, 11 U.S.C. § 362, because it is a question of law. *See McCarthy, Johnson & Miller v. N. Bay Plumbing, Inc. (In re Pettit)*, 217 F.3d 1072, 1077 (9th Cir. 2000).

**[5]** The stay does not prevent a plaintiff/debtor from continuing to prosecute its own claims nor does it prevent a defendant from protecting its interests against claims brought by the debtor. *Gordon v. Whitmore (In re Merrick)*, 175 B.R. 333, 337-38 (B.A.P. 9th Cir. 1994). This is true, even if the defendant's successful defense will result in the loss of an allegedly valuable claim asserted by the debtor. *Martin-Trigona v. Champion Fed. Sav. and Loan Ass'n*, 892 F.2d 575, 577 (7th Cir. 1989).

Bankruptcy courts, therefore, differentiate between actions for affirmative relief against the debtor's estate, which are stayed, and defensive actions, which are not. It is clear, for example, that a claim objection or motion to disallow a claim is generally defensive and therefore not stayed. *See id.* This is only natural, because the core power of the bankruptcy court is to determine the validity, amount, and priority of claims. 28 U.S.C. § 157(b)(2). "In a claim objection, the court investigates the existence, validity, and enforceability of claims and determines whether the claim is allowed by applicable law." *In re Palmdale Hills*, 423 B.R. at 665 (citing *Murgillo v. Cal. State Bd. of Equalization (In re Murgillo)*, 176 B.R. 524, 532-33 (B.A.P. 9th Cir. 1995)). This process protects both the estate and other creditors from invalid claims. Moreover, it does not harm the claiming debtor's estate, because it does not exercise control of an allowed claim, but rather determines that the asserted claim is not allowed by law. *USA Capital Realty Advisors, LLC v. USA Capital Diversified Trust Deed Fund, LLC (In re USA Commercial Mortg. Co.)*, 377 B.R. 608, 617 (B.A.P. 9th Cir. 2007). The debtor's estate still has the claim, but its facade of validity has been

stripped away to reveal that the claim is (and always has been) worthless.[5]

**[6]** In contrast, "subordination of a claim presupposes that the claim is allowed but for equitable reasons must be subordinated to the other allowed claims." *Id.* In such a case, the claiming debtor has a valid allowed claim with an established priority, which may even be secured by a valid lien. Equitable subordination changes the character and value of the lien. For example, in *In re USA*, equitable subordination of the general claims would allow them lower priority than the LLC members' equity interests. *Id.* at 618. In contrast to disallowance of a claim, where no property changes hands, a court may order that "any lien securing such a subordinated claim be transferred to the estate." 11 U.S.C. § 510(c)(2). Here, for example, transferring the liens from Lehman's estate to Palmdale's estate would give the Palmdale estate millions of dollars worth of property, in which it formerly had no equity, at the expense of leaving Lehman unsecured. Although Lehman might ultimately recover nothing, just as if the claim had been disallowed, the difference is that Lehman began with a valid, enforceable claim secured by a lien, which would be wrested from its estate and given to Palmdale.[6]

**[7]** The BAP did not err in holding that equitable subordination in this situation was an affirmative action that would

---

[5]In this way, objecting to a claim is similar to allowing a defendant to contest a civil claim brought by a plaintiff/debtor. *See, e.g.*, *In re Merrick*, 175 B.R. at 338 ("While it is true that a successful defense to a lawsuit eliminates its alleged value, this results in no loss to the estate . . . . There can be no loss of what does not exist."). In both cases, the legal proceedings ultimately determine whether the claimant ever had a valid claim.

[6]Equitable subordination, unlike disallowance, more closely resembles a counterclaim. The claim is already allowed, but Palmdale is asserting that although it is valid, it should be conveyed to the estate based on equitable grounds. A counterclaim, even in a case where a *defense* does not violate the stay, is still subject to the stay. *Eisinger v. Way (In re Way)*, 229 B.R. 11, 14 (B.A.P. 9th Cir. 1998).

violate Lehman's stay. There is no binding authority to the contrary. Moreover, its decision is consistent with the purpose of § 362 to protect the bankruptcy estate. The decision does not bar Palmdale from equitably subordinating Lehman's claims. It merely requires Palmdale to bring an adversary proceeding in Lehman's bankruptcy court or file for relief from stay, thus allowing Lehman's bankruptcy court to control the distribution of Lehman's estate. *See Snavely v. Miller (In re Miller)*, 397 F.3d 726, 730, 732 (9th Cir. 2005).

**[8]** We can find only one published case addressing both equitable subordination and the scope of an automatic stay, *In re Metiom*, 301 B.R. 634 (Bankr. S.D.N.Y. 2003). However, we do not find *In re Metiom* helpful in making this decision. *In re Metiom* involved an unsecured claim, and so could not involve the transfer of a lien to the estate of the "defending" debtor. This case is different. The bankruptcy court's ability, in equitably subordinating a *secured* claim, to transfer property from the bankruptcy estate, means that a claim for equitable subordination of a secured claim is an "act to . . . exercise control over property of the estate" subject to stay. 11 U.S.C. § 362(a)(3).

**[9]** Further, the Southern District of New York does not speak with one voice on this issue. For example, that court had held, prior to *In re Metiom*, that an adversary complaint against another debtor for equitable subordination was an offensive action subject to the automatic stay. *In re Enron Corp.*, 2003 Bankr. LEXIS 2261, at *23 (Bankr. S.D.N.Y. Jan. 13, 2003). Although *In re Enron* is unpublished, Judge Peck[7] (adjudicating Palmdale's motion for relief from Leh-

---

[7]Judge Peck denied a motion for contempt in the Shinsei Bank Matter relating to a plan to subordinate claims allegedly in violation of the stay. However, that case was highly dependant on issues of Japanese law, which Judge Peck confirmed at the Palmdale hearing. Transcript of Hearing at 76 ("[*Shinsei*] was incredibly fact specific, and is not subject to broad application in the U.S.").

man's stay) unequivocally declared that "the law in the Southern District of New York, as stated by Judge Gonzalez in the *Enron* Case, and I choose to follow his reasoning, is that litigation brought by a party against a debtor seeking to equitably subordinate claims of that debtor constitutes a violation of the automatic stay." Transcript of Hearing at 75. In view of this support from other courts and because equitable subordination has the effect of taking a valid, enforceable claim and its accompanying lien from the debtor's estate, we affirm the BAP's judgment.[8]

AFFIRMED.

---

[8]Appellant's Motion to take Judicial Notice of Pleadings is denied. Appellee's Motion to Strike Portion of Appellants' Reply Brief is denied.