**NOT FOR PUBLICATION**

## UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP No. CC-17-1373-SKuF |
| MELVIN C. BRAY, | Bk. No. 2:17-bk-17157-ER |
| Debtor. | |
| MELVIN C. BRAY, | |
| Appellant, | |
| v. | **MEMORANDUM**[*] |
| U.S. BANK NATIONAL ASSOCIATION, as Trustee for Mastr Asset Backed Securities Trust 2006-WMC3, Mortgage Pass-Through Certificates, Series 2006-WMC3, | |
| Appellee. | |

Submitted Without Oral Argument
on July 27, 2018

Filed – August 7, 2018

---

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Ernest M. Robles, Bankruptcy Judge, Presiding

---

Appearances:     Appellant Melvin C. Bray, on brief, pro se; Cassandra
                 Jean Richey of Barrett Daffin Frappier Treder & Weiss,
                 LLP, on brief, for appellee.

---

Before: SPRAKER, KURTZ, and FARIS, Bankruptcy Judges.

## INTRODUCTION

Melvin C. Bray appeals from an order reopening his involuntary chapter 7[1] bankruptcy case. Bray also appeals from an order annulling the automatic stay in favor of appellee U.S. Bank National Association, as Trustee for Mastr Asset Backed Securities Trust 2006-WMC3, Mortgage Pass-Through Certificates, Series 2006-WMC3. The stay annulment order retroactively validated a postpetition nonjudicial foreclosure sale that U.S. Bank conducted to enforce its rights as successor beneficiary under a deed of trust encumbering a parcel of residential real property located on Mount Vernon Drive in Los Angeles, California.

Bray lacks standing to appeal the order reopening the case. As for the

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532.

stay annulment order, none of Bray's arguments on appeal persuade us that the bankruptcy court committed reversible error when it entered the order annulling the stay. Accordingly, we DISMISS IN PART, for lack of standing, and we AFFIRM IN PART.

## FACTS

### A.    The Involuntary Petition Filing, The Zahir Relief From Stay Motion, And Dismissal Of The Petition.

On June 12, 2017, two alleged creditors of Bray's commenced an involuntary chapter 7 petition against him. Within days of the bankruptcy filing, a secured creditor, Farid Zahir, filed a motion for relief from stay concerning enforcement of his rights against an unrelated parcel of real property in which Bray claimed an interest. The June 2017 stay motion is relevant to this appeal in the following way:  Zahir presented evidence that the filing of the involuntary bankruptcy petition was part of a bad faith "fractional interest" scheme to hinder and delay Zahir from exercising his rights as a secured creditor.[2]

---

[2] A fractional interest scheme is one of several variant foreclosure scams designed to delay foreclosure, in which:

> a borrower who is facing foreclosure transfers a percentage interest in his or her property to several other potential bankruptcy debtors. Each of these debtors successively files for bankruptcy upon the expiration of the prior party's petition, thus invoking the automatic stay and delaying foreclosure indefinitely.

(continued...)

At the hearing on Zahir's relief from stay motion, the bankruptcy court granted the motion and also dismissed the involuntary petition against Bray. The bankruptcy court based its ruling, in part, on the fact that the petitioning creditors had not submitted the required proof that the summons and the involuntary petition had been timely served. The bankruptcy court also found as follows: "The filing of the petition was part of a scheme to delay, hinder, and defraud creditors, which involved the transfer of all or part ownership of, or other interest in, the Property without the consent of Movant or court approval."

The bankruptcy court entered its case dismissal order and its order granting Zahir's relief from stay motion in July 2017. Bray did not appeal either order. Nor has he ever challenged the determination that the involuntary petition was filed for the purpose of hindering, delaying and defrauding his creditors. Bray's bankruptcy case was closed by the bankruptcy court clerk's office on August 3, 2017.

**B.    U.S. Bank's Motions And The Evidence Regarding Its Security Interest In, And Foreclosure Proceedings Against, The Mount Vernon Drive Property.**

A few months later, on November 21, 2017, U.S. Bank filed a motion to reopen Bray's bankruptcy case for the limited purpose of moving to

---

[2](...continued)
Note: Final Report of the Bankruptcy Foreclosure Scam Task Force, 7 Am. Bankr. Inst. L. Rev. 341, 342 (1999).

annul the stay. The bankruptcy court granted the motion to reopen the next day, and U.S. Bank filed its stay annulment motion.

In support of its stay annulment motion, U.S. Bank principally relied on evidence demonstrating its security interest in the Mount Vernon Drive property and the series of bankruptcies and title transfers affecting the property. According to U.S. Bank, in May 2006, its predecessor in interest, WMC Mortgage Corp., lent $860,000 to a person named Ivan Horton, who used the funds to purchase the Mount Vernon Drive property. In exchange for the loan funds, Horton executed a note and a deed of trust. Under the deed of trust, Horton granted a security interest in the Mount Vernon Drive property to MERS as nominee for WMC Mortgage Corp. MERS later assigned the deed of trust to U.S. Bank, as reflected in a corrective assignment of deed of trust dated September 9, 2015, which was recorded in the Los Angeles County Recorder's Office on October 15, 2015.[3]

In January 2016, U.S. Bank, as successor beneficiary under the deed of trust, executed and recorded a substitution of trustee naming Barrett Daffin Frappier Treder & Weiss, LLP ("Barrett Daffin") as successor trustee under the deed of trust. On behalf of U.S. Bank, Barrett Daffin commenced nonjudicial foreclosure proceedings against the Mount Vernon Drive

---

[3] The corrective assignment indicates that MERS executed the corrective assignment in order to correct an error in the name of the assignee identified in the original assignment, which was executed and recorded in 2007.

property because Horton was delinquent on his obligations under the $860,000 note. Barrett Daffin originally scheduled and noticed a trustee's sale of the Mount Vernon Drive property for August 15, 2016. That foreclosure sale was postponed from time to time by a series of bankruptcies and transfers of fractional interests in the property by Horton and his successors in interest.

The last transfer of the property was a Quitclaim Deed conveying a 10% interest in the property from Anne Shores to Bray. The Quitclaim Deed is dated June 9, 2017, though the notary public's signature verifying Shores' signature is dated June 15, 2017, the same date the Quitclaim Deed was recorded. Bray held no interest in the property prior to the Quitclaim Deed.

The timing of the Quitclaim Deed is significant because the involuntary petition was filed against Bray on June 12, 2017. According to Bray, he caused a third party to fax to Barrett Daffin notice of the bankruptcy case and of his interest in the property on the afternoon of June 15, 2017, and again on the morning of June 16, 2017.

On June 16, 2017, at 12:20 p.m., Barrett Daffin conducted a nonjudicial foreclosure sale, at which a third party purchased the Mount Vernon Drive property. According to U.S. Bank, Barrett Daffin only became aware of the faxed notice regarding Bray, his bankruptcy case, and his interest in the property after the nonjudicial foreclosure sale occurred.

In his opposition to the stay annulment motion, Bray insisted that,

6

based on the notices faxed to Barrett Daffin on June 15 and 16, 2017, Barrett Daffin had prior knowledge of the automatic stay. He argued that U.S. Bank thus was not entitled to annulment of the stay under a balancing of the equities.[4]

## C.     The Bankruptcy Court's Ruling.

At the hearing on the stay annulment motion, the bankruptcy court granted U.S. Bank the relief it requested. Relying on U.S. Bank's papers and on the prior determination in the Zahir relief from stay proceedings, the court found that the involuntary petition filed against Bray was a "paradigmatic bad faith petition" and that the filing "was part of a scheme to delay, hinder, and defraud creditors, which involved the transfer of all or part ownership of, or other interest in, the Property without the consent of Movant or court approval and multiple bankruptcy cases affecting the Property."

In addition, the court ruled against the debtor on the issue of prior notice. The court found that there wasn't sufficient evidence that Barrett Daffin was given advance notice of the latest bankruptcy filing *and* Bray's recently acquired interest in the property. As the court put it, the exhibits attached to Bray's opposition included the fax transmission reports,

---

[4] Copies of Bray's opposition and the accompanying declarations were not included in either parties' excerpts of record. Even so, we can and do take judicial notice of their filing and contents. *See Rivera v. Curry (In re Rivera)*, 517 B.R. 140, 143 n.2 (9th Cir. BAP 2014).

7

showing that a fax was sent but not the contents of those faxes. Bray submitted a declaration indicating only that the faxes included the Notice of Involuntary Bankruptcy Filing and "supporting documents." The bankruptcy court was not persuaded that Barrett Daffin knew of the bankruptcy case and Bray's interest in the property before the foreclosure sale occurred.

The bankruptcy court entered its order annulling the stay on December 5, 2017. Bray timely appealed.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(G). Subject to the standing discussion set forth below, we have jurisdiction under 28 U.S.C. § 158.

## ISSUES

1. Does Bray have standing to appeal the order reopening the case?

2. Did U.S. Bank have standing to seek stay annulment?

3. Did the bankruptcy court abuse its discretion when it granted U.S. Bank's stay annulment motion?

## STANDARDS OF REVIEW

We review de novo all standing issues. *Palmdale Hills Prop., LLC v. Lehman Commercial Paper, Inc. (In re Palmdale Hills Prop., LLC)*, 654 F.3d 868, 873 (9th Cir. 2011). When we review an issue under the de novo standard of review, "we consider a matter anew, as if no decision had been rendered

previously." *Kashikar v. Turnstile Capital Mgmt., LLC (In re Kashikar)*, 567 B.R. 160, 164 (9th Cir. BAP 2017).

Orders granting relief from stay, including stay annulment orders, are reviewed for an abuse of discretion. *Fjeldsted v. Lien (In re Fjeldsted)*, 293 B.R. 12, 24 (9th Cir. BAP 2003). The bankruptcy court abuses its discretion if it applies the wrong legal rule or if its findings are illogical, implausible or without support in the record. *United States v. Hinkson*, 585 F.3d, 1247, 1262 (9th Cir. 2009) (en banc).

## DISCUSSION

**A.    Standing Issues.**

In every federal case, the plaintiff must establish its standing by demonstrating "injury in fact, causation and redressability." *Republic of Marshall Islands v. United States*, 865 F.3d 1187, 1199 (9th Cir. 2017) (citing *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1386 (2014)). These standing requirements are derived from the case and controversy requirement of Article III of the Constitution. *Id.*

The constitutional standing inquiry requires us to determine whether the plaintiff, or movant, had a sufficient interest in the outcome of the matter to confer jurisdiction on the court. *Warth v. Seldin*, 422 U.S. 490, 498-99 (1975). We also must consider prudential standing, which is a series of judicially self-imposed limitations on the *exercise* of that jurisdiction. *See id.* at 498-501; *Veal v. Am. Home Mortg. Servicing, Inc. (In re Veal)*, 450 B.R. 897,

9

906-07 (9th Cir. BAP 2011).

Bray's appeal raises two different types of standing issues: (1) Bray's standing to appeal the order reopening the bankruptcy case; and (2) U.S. Bank's standing to seek stay annulment. We will address each of these standing issues in turn.

1. **Bray's Standing To Appeal The Order Reopening The Bankruptcy Case**.

U.S. Bank moved to reopen the bankruptcy case to enable the bankruptcy court to address the stay annulment motion. But reopening the case merely was an administrative precursor to the court addressing the stay annulment motion. As we previously have stated, reopening a closed case is a "ministerial act" that primarily enables the clerk to manage the case as an active matter. *Menk v. Lapaglia (In re Menk)*, 241 B.R. 896, 913 (9th Cir. BAP 1999). Thus, by itself, an order reopening a case "lacks independent legal significance and determines nothing with respect to the merits of the case." *Id.*

Consequently, Bray's appeal from the order reopening the case implicates the prudential standing principle known as the "person aggrieved" standard. Under this standard, only "those persons who are directly and adversely affected pecuniarily by an order of the bankruptcy court" have standing to appeal. *Lehman Commercial Paper, Inc. v. Palmdale Hills Prop., LLC (In re Palmdale Hills Prop., LLC)*, 423 B.R. 655, 662 (9th Cir.

BAP 2009), *aff'd*, 654 F.3d 868 (9th Cir. 2011) (quoting *Fondiller v. Robertson (In re Fondiller)*, 707 F.2d 441, 442 (9th Cir. 1983)). To satisfy this standard, Bray needs to show that the order on appeal diminished his property, increased his burdens or otherwise detrimentally affected his rights. *See In re Fondiller*, 707 F.2d at 442–43.

In *Menk,* this Panel held that, when a case is reopened in order to administratively facilitate adjudication of a creditor's nondischargeability action against the debtor, the debtor lacks standing to appeal the order reopening the case. *In re Menk*, 241 B.R. at 917. The same is true when, as here, a case is reopened for the purpose of addressing a creditor's stay annulment motion. As in the nondischargeability context, the reopening of the case to facilitate the court's presiding over stay annulment proceedings is a nonjurisdictional, administrative act that determines nothing of the merits of the stay annulment motion. *Id.* In other words, the order reopening the case did not diminish Bray's property, increase his burdens or otherwise detrimentally affect his rights. Accordingly, Bray lacks standing to appeal the bankruptcy court's order reopening the case, and the portion of Bray's appeal challenging that order must be dismissed.

2.    **U.S. Bank's Standing To Seek Stay Annulment.**

In the bankruptcy court, U.S. Bank moved to annul the stay to validate its postpetition foreclosure of the property which extinguished Bray's interest. U.S. Bank's constitutional standing to do so was obvious

and undisputed. Absent stay annulment, the foreclosure sale it conducted was void as a violation of the automatic stay. *Schwartz v. United States (In re Schwartz)*, 954 F.2d 569, 573 (9th Cir. 1992). The effect of the automatic stay and stay annulment on the foreclosure sale establish the injury in fact, causation and redressability for Article III standing. *See generally In re Veal*, 450 B.R. at 906 (explaining Article III standing requirements in the relief from stay context).

Bray has not challenged U.S. Bank's Article III standing. Instead, he argues that U.S. Bank failed to establish that it was a "person entitled to enforce the note" and therefore lacked prudential standing to seek stay relief. *See id.* at 914-18 (holding that, under Illinois law, assignee of mortgagee could not establish its prudential standing to seek relief from stay to pursue foreclosure remedy without establishing that it was a person entitled to enforce the note). According to Bray, the original lender's indorsement of the note is undated, and therefore invalid. He further contends that it is impossible to determine when the note was indorsed or whether the original lender still was a viable entity capable of indorsing the note at the time of indorsement. Bray's argument lacks merit. Indorsement signatures are presumed to be authentic and authorized. *See In re Stanley*, 514 B.R. 27, 39 (Bankr. D. Nev. 2012) (citing UCC §§ 1–206 & 3–308). Bray has not presented any evidence to overcome that presumption. Nor is there any requirement that indorsements be dated in order to be effective. *See id.*

Even if we were to assume that U.S. Bank failed to establish that it is a person entitled to enforce the note, U.S. Bank still established its entitlement under California law to foreclose and its prudential standing to seek stay annulment. Pursuant to California law, the trust deed beneficiary, or its successor in interest, is entitled to initiate nonjudicial foreclosure proceedings regardless of whether it holds the original note. *Kalnoki v. First Am. Tr. Servicing Solutions, LLC*, 8 Cal. App. 5th 23, 42 (2017); *Debrunner v. Deutsche Bank Nat'l Trust Co.*, 204 Cal. App. 4th 433, 440-42 (2012). Here, U.S. Bank presented a copy of a notorized and recorded assignment of deed of trust naming it as the successor beneficiary under the subject deed of trust. This was sufficient under California law to entitle U.S. Bank to initiate nonjudicial foreclosure proceedings. Because U.S. Bank was entitled under California law to foreclose, it also had prudential standing to seek stay annulment. *See Rozier v. U.S. Bank N.A. (In re Rozier)*, BAP No. CC-12-1359-KiPaD, 2013 WL 4428808, at *4–5 (9th Cir. BAP Aug. 19, 2013), *aff'd*, 623 F. App'x 517 (9th Cir. 2015). Thus, we reject Bray's prudential standing argument.

**B.  Weighing Of The Factors To Retroactively Annul The Automatic Stay.**

On appeal, Bray has not challenged that the bankruptcy court cited to, and correctly applied, the proper legal standard for annulment of the automatic stay. In support of its decision, the bankruptcy court cited *In re*

13

*Fjeldsted*[5] and focused on what are commonly recognized as the two most critical factors in deciding whether to annul the stay: (1) the creditor's knowledge of the applicability of the automatic stay at the time it acted in violation of the stay; and (2) "whether the debtor engaged in unreasonable or inequitable conduct, or prejudice would result to the creditor." *Nat'l Envtl. Waste Corp. v. City of Riverside (In re Nat'l Envtl. Waste Corp.)*, 129 F.3d 1052, 1055 (9th Cir. 1997).

We have identified a number of additional factors that often will be relevant in making the stay annulment determination. *In re Fjeldsted*, 293 B.R. at 24-25.[6] But we emphasized in *In re Fjeldsted* that this determination

---

[5] *In re Fjeldsted*, 293 B.R. at 24-25.

[6] In *Fjeldsted*, we suggested that the following non-exhaustive factors could be considered in deciding stay annulment motions:

1. Number of filings;
2. Whether, in a repeat filing case, the circumstances indicate an intention to delay and hinder creditors;
3. A weighing of the extent of prejudice to creditors or third parties if the stay relief is not made retroactive, including whether harm exists to a bona fide purchaser;
4. The Debtor's overall good faith (totality of circumstances test);
5. Whether creditors knew of stay but nonetheless took action, thus compounding the problem;
6. Whether the debtor has complied, and is otherwise complying, with the Bankruptcy Code and Rules;
7. The relative ease of restoring parties to the status quo ante;
8. The costs of annulment to debtors and creditors;
9. How quickly creditors moved for annulment, or how quickly debtors moved
(continued...)

14

should be made on a case-by-case basis and further indicated that all of the factors need not be explicitly discussed in each case: "one factor may so outweigh the others as to be dispositive." *Id.* at 25.

Here, the bankruptcy court found that the involuntary petition filed against Bray and his receipt of a partial interest in the property were part of a continuing scheme to delay, hinder and defraud U.S. Bank from exercising its rights as the successor beneficiary under the deed of trust. Bray has not made any effort to challenge this finding, and there is considerable evidence in the record to support it.

As for Barrett Daffin's alleged prior knowledge of Bray's bankruptcy case and his interest in the property, on the evidence presented, the bankruptcy court reasonably could have found that Barrett Daffin *did* have advance knowledge before the foreclosure sale occurred. The declarations and exhibits presented to the court arguably suggested receipt of at least some notice before the sale occurred. Moreover, U.S. Bank and Barrett Daffin did not attempt to explain whether either of them received Bray's

---

[6](...continued)
to set aside the sale or violative conduct;
10. Whether, after learning of the bankruptcy, creditors proceeded to take steps in continued violation of the stay, or whether they moved expeditiously to gain relief;
11. Whether annulment of the stay will cause irreparable injury to the debtor;
12. Whether stay relief will promote judicial economy or other efficiencies.

*In re Fjeldsted*, 293 B.R. at 25 (citation omitted).

15

June 15, 2017 and June 16, 2017 four-page fax notices and, if not, why they did not receive them. Instead, they admitted to receiving an eleven-page fax from Bray on June 16, 2017, but claimed they did not see it until after the sale occurred.

On the record before us, the bankruptcy court could, and did, reasonably credit Barrett Daffin's claims that it did not learn of Bray's bankruptcy case and his interest in the property until after the foreclosure sale occurred. The evidence is conflicting on this point; in particular, there was little if any evidence that Barrett Daffin had notice, not just of Bray's involuntary bankruptcy, but also that Bray claimed an interest in the property. Further, as we said in *Fjeldsted*, 293 B.R. at 24, the creditor's awareness of the bankruptcy is "not dispositive." We cannot say that the bankruptcy court's finding in this regard was illogical, implausible or without support in the record. *See Hinkson*, 585 F.3d at 1262. The bankruptcy court considered the evidence presented, including that Barrett Daffin may have known of the bankruptcy filing prior to the foreclosure, and found the evidence lacking. In other words, "[w]here there are two permissible views of the evidence, the fact finder's choice between them cannot be clearly erroneous." *Anderson v. City of Bessemer City*, 470 U.S. 564, 574 (1985).

The bankruptcy court further determined that, in weighing the equities, the equivocal evidence regarding the notice issue was outweighed

16

by the clear evidence of the bad faith petition filing and the scheme to hinder, delay and defraud the secured creditors. The manner in which the bankruptcy court weighed the evidence and the equities was neither illogical, implausible nor unsupported by the record. In short, Bray has not persuaded us that the bankruptcy court abused its discretion when it granted U.S. Bank's stay annulment motion.

## CONCLUSION

For the reasons set forth above, we DISMISS for lack of standing the portion of this appeal challenging the bankruptcy court's order reopening the bankruptcy case, and we AFFIRM the bankruptcy court's stay annulment order.