NOT FOR PUBLICATION

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>DANIELA M. FARINA,<br>        Debtor. | BAP No. NC-22-1071-TBF<br><br>Bk. No. 22-10021-RLE |
| DANIELA M. FARINA,<br>        Appellant,<br>v.<br>JANINA M. HOSKINS, Chapter 7<br>Trustee; SAN MATEO CREDIT UNION;<br>WELLS FARGO BANK, N.A.; VICTOR<br>ALAM,<br>        Appellees. | **MEMORANDUM**[*] |

Appeal from the United States Bankruptcy Court
for the Northern District of California
Roger L. Efremsky, Bankruptcy Judge, Presiding

Before: TAYLOR, BRAND, and FARIS, Bankruptcy Judges.

## INTRODUCTION

Appellant Daniela M. Farina ("Debtor") appeals from an order

granting the chapter 7[1] trustee's motion to approve compromise of

---

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, all "Rule" references are to the Federal Rules

controversy with creditor, Victor Alam (the "Compromise Motion").

Approval of the compromise was supported by sufficient evidence, and the

bankruptcy court did not abuse its discretion in granting the Compromise

Motion. Thus, we AFFIRM.

FACTS[2]

**A.    Background of the relationship between Debtor and Mr. Alam**

Mr. Alam is a California attorney who had a two-year personal and

business relationship with Debtor. During that time, they formed a joint

venture real estate partnership which purchased two properties in Napa,

California: the Euclid Avenue Property and the First Avenue Property

(collectively, the "Properties"). While they initially agreed to make equal

contributions to purchase the Properties, Mr. Alam became the sole obligor

on the purchase money loans, and he contributed roughly $290,000 while

Debtor contributed only $175,000. Despite these disparities, they took joint

title to the Properties with each holding a 50% interest.

When the relationship ended, litigation began with a fury in multiple

courts. For his part, Mr. Alam filed an action seeking partition, an

accounting, and appointment of a receiver with respect to the Properties.

Once appointed, the receiver found a buyer for the Euclid Avenue Property

but was unable to close the sale because Debtor filed two bankruptcies.

---

of Bankruptcy Procedure.

[2] We exercise our discretion to take judicial notice of documents electronically filed in the case. *See Atwood v. Chase Manhattan Mortg. Co. (In re Atwood)*, 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).

Promptly after the filing of the second bankruptcy (the case from which this appeal arises), Mr. Alam obtained an order: (1) granting stay relief to allow him to prosecute vexatious litigant and domestic violence related motions in state court; and (2) excusing turnover of the Euclid Avenue Property, allowing the receiver to complete the pending sale, and requiring the deposit of sale proceeds with the chapter 7 trustee.[3] Debtor's appeal from this order was dismissed as untimely, and the Euclid Avenue Property sale closed.

## B. The chapter 7 petition and Debtor's motion to dismiss

Debtor alleges that her second bankruptcy, a pro per chapter 7 case, was filed by a third person masquerading as an attorney who prepared the case initiation documents. She admitted, however, that she retained this person to file a bankruptcy case for her but claimed that she wanted a chapter 13 case.

Based on this assertion, she filed an unsuccessful dismissal motion and argued that the bankruptcy court lacked jurisdiction. Debtor appealed the denial of the motion but later dismissed the appeal.[4]

---

[3] Four days later, the superior court designated Debtor as a vexatious litigant in case no. 20-CV-001250.

[4] That ruling denying dismissal based on the facts presented in Debtor's motion is now the law of the case and will not be disturbed or revisited by the Panel. *See Rebel Oil Co. v. Atl. Richfield Co.*, 146 F.3d 1088, 1093 (9th Cir. 1998) (a court is generally precluded from reconsidering an issue that has already been decided by the same court, or a higher court in the identical case.)

Debtor argues that the denial order was not final therefore the dismissed appeal and underlying decision should be ignored. We disagree. In *Aspen Skiing Co. v. Cherrett*

3

## C. The settlement and the Compromise Motion

As of the petition date, Debtor had seven lawsuits against Mr. Alam in various stages of litigation. Five were unresolved, while two were resolved in Mr. Alam's favor. He obtained a substantial fee award in one case, and Debtor appealed. In the other, his fee request was pending on the petition date. His proof of claim asserted a claim of "$264,988 plus unknown amount" based on the awarded and requested fees and costs.

The trustee and Mr. Alam reached a settlement early in the case which provided as follows:

1. Mr. Alam agreed to release an abstract of judgment he filed against the Properties.

2. Mr. Alam agreed to waive any ownership or other claim to the Properties or their proceeds.

---

*(In re Cherrett)*, 873 F.3d 1060, 1065 (9th Cir. 2017), the Ninth Circuit found that denial of the creditor's motion to dismiss the debtor's chapter 7 case under § 707(b) was final; "the bankruptcy court's order resolved the Cherretts' ability to file a Chapter 7 bankruptcy petition." *See* also *Ritzen Group, Inc. v. Jackson Masonry, LLC,* 140 S.Ct. 582, 587 (2020). While some orders denying a motion to dismiss a chapter 7 may be interlocutory, we believe the order here – finding jurisdiction to proceed – is akin to *Cherrett* and *Ritzen* and therefore final.

Further, Debtor's argument that the bankruptcy court had no jurisdiction because she intended to file chapter 13 instead of chapter 7 is frivolous because, either way, she clearly intended to submit herself and her property to the jurisdiction of the bankruptcy court. Counsel conceded at oral argument that she intended to file bankruptcy when she did.

3. Mr. Alam agreed to waive any claim he had against the estate to allow payment of administrative expenses. If proceeds remained, however, he retained the right to a claim against them.

4. The trustee agreed to prosecute any necessary lien avoidance actions relating to disputed liens on the Properties.

5. The trustee agreed to a full release of estate claims against Mr. Alam, his relatives, and other related parties.

6. The trustee agreed to dismiss all Debtor's pending litigation against Mr. Alam and his related parties to the fullest extent possible.

The trustee filed her Compromise Motion and concurrently sought a hearing on shortened notice. Debtor filed a 21-page opposition, but the bankruptcy court granted the request and scheduled the hearing on the approval of the settlement to be heard concurrently with Debtor's motions to dismiss and to convert to chapter 13. The bankruptcy court's order shortening time ("OST") required service on Debtor by email and by mail to the mailbox address on her petition, shortened the response time to 13 days, but allowed written opposition in advance of the hearing or oral opposition at the hearing.

Debtor filed a written response to the Compromise Motion (the "Response") and a motion for continuance of the hearing ("Motion for

Continuance") three days before the hearing.[5] The Response largely

repeated arguments made in opposing the request to shorten time:

> 1) that the bankruptcy court lacked jurisdiction because a third party
>
> filed her case as a chapter 7 not a chapter 13;
>
> 2) that the compromise was not fair, reasonable, or adequate;
>
> 3) that the compromise was not supported by appropriate evidence;
>
> and

---

[5] Debtor filed the following pleadings between March 2, 2022 (the day after the Compromise Motion was filed) and March 14, 2022 (the day of the hearing on the Compromise Motion):

- an opposition to application for shortened time re Compromise Motion (Doc. 139) (3/2/22);
- a motion for new hearing date for contempt motion (Doc. 140) (3/2/22);
- a fourth motion to dismiss (Doc. 148) (3/3/22);
- a supplement to motion to dismiss (Doc. 169) (3/7/22);
- a motion for order enforcing automatic stay (Doc. 172) (3/7/22);
- a motion to recuse Judge Efremsky (Doc. 173) (3/7/22);
- an application for shortened notice re motion to dismiss (Doc. 174) (3/7/22);
- a motion for stay relief to excuse turnover for limited purpose of determining ownership of First Avenue Property (Doc. 177) (3/8/22);
- an application for shortened notice re stay relief (Doc. 184) (3/8/22);
- a motion for stay pending appeal of further appeals (Doc. 185) (3/8/22);
- a motion to convert the case to chapter 13 (Doc. 190) (3/9/22);
- an "ex-parte application for stay of order of possession and writ of assistance pending motion to dismiss bankruptcy case" (Doc. 205) (3/10/22);
- a response to Compromise Motion (Doc. 224) (3/11/22);
- a motion for continuance of Compromise Motion (Doc. 225) (3/11/22);
- a motion for stay pending appeal of recusal motion (Doc. 246) (3/14/22).

In addition, from the petition date through March 14, 2022, Debtor filed seven notices of appeal to the BAP in this case; and 13 through April 6, 2022, the date of the hearing on the Compromise Motion.

4) that the bankruptcy court violated her due process rights by hearing the matter on shortened notice, finding service proper, and failing to provide reasonable accommodations for her alleged visual disabilities.

More particularly, she argued that she did not receive the Compromise Motion asserting that the trustee falsified the proof of service intentionally to "disadvantage" her. The Motion for Continuance repeated that she has a visual disability and claimed that she did not receive an additional 1000 pages of documents filed on March 10 and 11.

**D.    The hearing on the Compromise Motion**

At the hearing, Debtor appeared and spoke at length. She largely focused on her motion to dismiss and withdrew her then-pending request to convert the case to chapter 13. The bankruptcy court denied her request for dismissal.

As to the Compromise Motion, she repeated the arguments already made in writing and alleged her inability to respond. But she never explained what evidence or argument she intended to muster if allowed more time.

The bankruptcy court granted the Compromise Motion with one or two non-substantive modifications, and Debtor timely appealed.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A). We have jurisdiction under 28 U.S.C. § 158.

## ISSUES

1.  Whether Debtor has standing to object to the proposed compromise?

2.  Whether the bankruptcy court's approval of the Compromise Motion was an abuse of discretion?

3.  Whether the bankruptcy court's approval of the trustee's application for order shortening time, refusal to give Debtor additional time to oppose the motion, and refusal to make special accommodations to Debtor based on her visual disability was an abuse of discretion?

## STANDARDS OF REVIEW

A bankruptcy court's decision as to whether it has subject matter jurisdiction is reviewed de novo. *Vylene Enters., Inc. v. Naugles, Inc. (In re Vylene Enters., Inc.)*, 90 F.3d 1472, 1475 (9th Cir.1996).

Standing is an issue of law which we review de novo. *Palmdale Hills Prop., LLC v. Lehman Com. Paper, Inc. (In re Palmdale Hills Prop., LLC)*, 654 F.3d 868, 873 (9th Cir. 2011). Whether Debtor satisfies the "person aggrieved" test is a question of fact that is reviewed for clear error. *Id.*

The standard of review for the approval of a settlement is abuse of discretion. *Martin v. Kane (In re A & C Properties)*, 784 F.2d 1377, 1380 (9th Cir. 1986).

As to abuse of discretion: "(1) we review de novo whether the bankruptcy court 'identified the correct legal rule to apply to the relief requested' and (2) if it did, we consider whether the . . . application of the legal standard was illogical, implausible, or without support in inferences

8

that may be drawn from the facts in the record." *Spark Factor Design, Inc. v. Hjelmeset (In re Open Med. Inst., Inc.)*, 639 B.R. 169, 180 (BAP 9th Cir. 2022), *appeals docketed*, No. 22-60017 (9th Cir. June 27, 2022), No. 22-60018 (9th Cir. June 27, 2022) (quoting *United States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir. 2009)). If a court "bases its ruling upon an erroneous view of the law or a clearly erroneous assessment of the evidence[,]" abuse of discretion exists. *United States v. Levoy (In re Levoy),* 182 B.R. 827, 831 (BAP 9th Cir. 1995) (citation omitted).

## DISCUSSION

### A.    Debtor has standing in this appeal.

"A federal court may exercise jurisdiction over a litigant only when that litigant meets constitutional and prudential standing requirements." *Veal v. Am. Home Mortg. Servicing, Inc. (In re Veal)*, 450 B.R. 897, 906 (9th Cir. BAP 2011) (citation omitted). "Constitutional standing requires an injury in fact, which is caused by or fairly traceable to some conduct, and which the requested relief will likely redress." *Id.* (citing *Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269, 273-74 (2008); additional citations omitted). "The prudential standing doctrine or the 'person aggrieved test' provides that '[o]nly those persons who are directly and adversely affected pecuniarily by an order of the bankruptcy court . . . have standing to appeal that order.'" *Palmdale Hills Prop.*, 654 F.3d at 874 (quoting *Fondiller v. Robertson (In re Fondiller)*, 707 F.2d 441, 442 (9th Cir. 1983)). It is Debtor's burden to establish standing. *Hasso v. Mozsgai (In re La Sierra Fin. Servs.,*

*Inc.)*, 290 B.R. 718, 726 (9th Cir. BAP 2002) (citing *Bennett v. Spear*, 520 U.S. 154, 167-68 (1997)).

Debtor erroneously claims standing based on Rule 9019(a) which required that she receive notice of the motion. That, she reasons, contemplates her as a "potential objector to a compromise motion, particularly when the debtor is the party most adversely affected." We disagree. Requiring notice does not, by itself, give standing to every person receiving notice.

The trustee raised the standing issue at the hearing and again in her opening brief arguing that this is not a surplus estate. But she offered no facts or evidence to support that statement. In her opening brief she simply states without support that "[t]he record shows that this is not a surplus estate."

The bankruptcy court noted when making its ruling that the issue of whether this is a solvent estate was still open. On this record, we, like the bankruptcy court, accept the possibility that a surplus estate exists and, thus, we cannot determine that Debtor lacks standing in this appeal.[6]

---

[6] Debtor argues in her Reply Brief that the loss of the Properties is an irreparable injury that provides standing on appeal. We reject that argument because she "lost" the property when she voluntarily filed her bankruptcy petition and the real property interests became property of the estate.

**B.    The bankruptcy court did not abuse its discretion in approving the Compromise Motion under the *A & C Properties* factors.**

Debtor argues (1) that the compromise was not fair, reasonable or "adequate"; 2) that it was not supported by appropriate evidence; and 3) that the bankruptcy court violated her due process rights by hearing the matter on shortened notice, finding that she had been properly served, and failing to provide reasonable accommodations for her alleged visual disabilities. We disagree.

**1.  The bankruptcy court's application of the *A & C Properties* factors was sufficient to find that the Compromise Motion was fair, reasonable, and adequate.**

Courts analyze the propriety of a settlement agreement under the rule announced by the Ninth Circuit in *A & C Properties*. It is based on the bedrock principal that "[t]he law favors compromise" in order "to allow the trustee and the creditors to avoid the expenses and burdens associated with litigating sharply contested and dubious claims." 784 F.2d at 1380–81. "[A]s long as the bankruptcy court amply considered the various factors that determined the reasonableness of the compromise, the court's decision must be affirmed." *Id*.

In conducting the *A & C Properties* analysis, the court "determin[es] the fairness, reasonableness and adequacy of a proposed settlement agreement" through mandatory consideration of four factors: "(a) The probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation

involved, and the expense, inconvenience and delay necessarily attending it; (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises." *Id.* at 1381. In engaging in its analysis, courts need not conduct a mini trial on the merits, and merely need to canvass the issues. *Open Med. Inst., Inc.*, 639 B.R. at 180. Further, the factors need not be treated in a vacuum; rather, they should be considered as a whole to determine whether the settlement compares favorably with the expected rewards of litigation. *Id.*

Therefore, the bankruptcy court can make general findings supporting the settlement when the record clearly reflects that application of these factors weighs in favor of the settlement. And the reviewing court should affirm where the record supports approval of the compromise, even if the findings are general. *Id.* at 181. In short, the absence of specific findings as to each of the *A & C Properties* factors does not by itself justify reversal.

## 2. The bankruptcy court's findings were adequate.

While the bankruptcy court did not make extensive and hyper-specific findings on the record, it expressly recognized *A & C Properties* as outlining the proper standard and made clear that it applied its factors in approving the Compromise Motion. Again, its failure to be more specific is not a basis for reversible error when the record supports its holding. *Id.* at 181. Here it does.

Debtor also argues that the trustee's declaration supporting the motion was not sufficient evidence to permit the bankruptcy court to make the required findings and analysis. Again, we disagree.

The evidence establishes that the settlement was within the range of reasonableness such that it was fair and equitable. Mr. Alam's waiver of any claims to the Properties provided the estate with 100% of their net value rather than only Debtor's 50% interest. This waiver constituted significant consideration in exchange for the releases of claims deemed dubious by the trustee.

Debtor does not address or refute this evidence. She was in a position to explain why her litigation had merit and achievable value in excess of Mr. Alam's contribution of his interest in the Properties, but she offered nothing. In short, there is no evidence at all opposing that which the trustee offered.

### 3. The *A & C Properties* factors have been met.

#### a. Probability of success

As described in the Compromise Motion and the trustee's accompanying declaration, the trustee reviewed the extensive documentation provided by Mr. Alam in his motion for relief as well other pleadings related to the litigation. She formed the opinion that the claims against Mr. Alam were not meritorious and that the probability of establishing liability on any such claims was low. She noted that the Santa Clara Superior Court stated on the record that Debtor was not credible and

that "the evidence did not support her claims, especially as to the eye injury." The same court found Mr. Alam to be credible and issued him a five-year restraining order to protect him from Debtor.

We acknowledge that the litigation between the parties exists in multiple courts, but Debtor's lack of litigation success to date, and statements from a state trial court add support to the trustee's general conclusions regarding a lack of probable litigation success.

The record contains sufficient evidence to enable the bankruptcy court to make a finding that the litigation against Mr. Alam had a low probability of success, especially given Debtor's failure to provide any meaningful evidence either in her oppositions or otherwise.[7]

### b. Difficulty in collection

The trustee acknowledged that this factor is not of particular concern.

### c. Complexity, expense, inconvenience, and delay in the litigation involved

It is beyond cavil that pursuing seven pending lawsuits in multiple courts and two counties with multiple parties, including on appeal, will be complex and expensive and would significantly delay closing the estate. Further, the trustee noted that the estate lacked funds to continue the litigation even if she thought there might be some merit. The record demonstrates that this factor strongly favors approval of the settlement.

---

[7] We note that Debtor did not appear at any of the nine scheduled meetings of creditors.

14

### d. Paramount interest of the creditors and deference to their reasonable views

The settlement with Mr. Alam ended significant litigation quickly and with virtually no cost to the estate. And in turn, the estate received a 50% interest in the Properties without any costs of litigation or risk of litigation loss. One of the Properties has already brought funds into the estate.

In short, the record clearly reflects that application of these factors weighs in favor of the settlement.

We cannot find on this record that the bankruptcy court abused its discretion in approving this compromise.

### C. The bankruptcy court did not violate Debtor's due process rights when it approved the Compromise Motion.

Debtor argues that the bankruptcy court violated her due process rights with respect to the Compromise Motion for a myriad of reasons. We disagree.

#### 1. The bankruptcy court did not abuse its discretion when it granted the trustee's application for order shortening time to hear the Compromise Motion.

The trustee requested that the bankruptcy court shorten the usual time to hear the motion under Rule 9019. The basis for the request was that, as Debtor was the plaintiff, the pending litigation required the trustee's immediate attention and substantial effort which was going to cost the estate dearly in administrative fees and costs.

The bankruptcy court granted the request and shortened the notice period from 21 days as provided by Rule 2002 to 13 days. The order provided that Debtor, or any other party, could file a written opposition to the motion at any time prior to the hearing or simply appear and oppose the motion orally. That, in effect, gave Debtor 13 days in which to fashion her opposition.

While Debtor claimed she did not get the Compromise Motion itself, she filed a lengthy written opposition to the application to shorten time and a further opposition to the Compromise Motion two days before the hearing. She attended the hearing and was permitted to speak at length. Given her activity in filing at least 31 separate pleadings in the case up to the March 14 hearing on the Compromise Motion, including 16 pleadings in the March 1 to March 14 period, she clearly knew how to find and review documents and make her views known to the parties and to the bankruptcy court. We disagree that she was denied due process.

Further, Debtor offered no explanation of what she was unable to do in those 13 days that she would have been able to do if she had more time to respond. Debtor explained, with no evidentiary support, that she could not access emails because of impaired vision and that she had an auxiliary service that transcribed documents into a format that she could see. She requested additional time to respond to the Compromise Motion to allow the auxiliary service to do its job. But she did not offer any evidence of

16

what the additional assistance would accomplish or how she was prevented from responding without the assistance.

We discern no abuse of discretion in the decision to shorten time.

**2. The bankruptcy court did not abuse its discretion when it determined that Debtor had proper notice of the Compromise Motion.**

Notice has been explained by the Supreme Court in *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950): "[a]n elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.* at 314 (citations omitted). "The notice must be of such nature as reasonably to convey the required information . . . and it must afford a reasonable time for those interested to make their appearance." *Id.* (citations omitted).

The trustee's counsel stated that she personally "stuffed the envelope" and mailed the motion to Debtor at the post office box address on Debtor's petition. She also spoke to Debtor for 18 minutes on March 1, 2022 and personally confirmed the mailing address.

In addition, Debtor admits that she had actual knowledge that the motion had been filed. We cannot agree that she was not apprised of the pendency of the action and afforded an opportunity to present her

17

objections. The notice reasonably conveyed the required information and gave her a reasonable time to object.

**3. The bankruptcy court did not abuse its discretion when it denied Debtor's request for special accommodations.**

Debtor requested accommodations based on the Americans with Disabilities Act and the Rehabilitation Act of 1973 (together "ADA"). The bankruptcy court denied the request. Debtor's briefs on appeal, however, do not discuss the ADA and that issue is waived. *See Christian Legal Soc'y v. Wu*, 626 F.3d 483, 487 (9th Cir. 2010).[8]

## CONCLUSION

Based on the foregoing, we AFFIRM.

---

[8] Further, the bankruptcy court denied that request for various reasons which can be summarized as inapplicability of the ADA to federal court proceedings and a lack of belief that she had a disability or that it prevented her from meaningfully participating in the proceedings. We cannot say that the bankruptcy court abused its discretion in making that ruling.