NOT FOR PUBLICATION

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>ALLANA BARONI,<br>　　　　　Debtor. | BAP No. CC-20-1278-LGT<br>BAP No. CC-20-1279-LGT<br>(Related Appeals) |
| ALLANA BARONI,<br>　　　　　Appellant,<br>v.<br>DAVID SEROR, Chapter 7 Trustee,<br>　　　　　Appellee. | Bk. No. 1:12-bk-10986-MB<br><br>**MEMORANDUM**[*] |

Appeal from the United States Bankruptcy Court
for the Central District of California
Martin R. Barash, Bankruptcy Judge, Presiding

Before: LAFFERTY, GAN, and TAYLOR, Bankruptcy Judges.

## INTRODUCTION

After debtor Alanna Baroni failed to fulfill her obligations under her confirmed chapter 11[1] plan, the bankruptcy court converted the case to chapter 7. The chapter 7 trustee ("Trustee") filed a motion for turnover, which Debtor opposed, arguing that her property revested in her upon

---

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, and all "Rule" references are to the Federal

confirmation, and conversion did not revest the property in the estate. The bankruptcy court disagreed and granted the motion, and the United States District Court for the Central District of California ("District Court") affirmed. Debtor appealed to the Ninth Circuit Court of Appeals and obtained a stay pending appeal of the turnover order from the District Court, which also stayed the sale order that is the subject of one of the instant appeals. The Ninth Circuit appeal remains pending.

In the meantime, Trustee negotiated a settlement with certain creditors. Among other things, the settlement calls for the sale of Debtor's two rental properties; Trustee separately moved for approval of the sale of one of those properties. The bankruptcy court approved both the settlement and the sale over Debtor's objection that the relevant assets were not property of the estate. Among other things, the bankruptcy court found that Debtor lacked standing to object. Debtor appeals both orders.

Because the issue on which Debtor's standing arguments are based could yet be decided in her favor, we review the merits of these appeals and AFFIRM.

## FACTS

### A.    Pre-Conversion Events

Debtor filed a chapter 13 bankruptcy case in February 2012. Shortly thereafter, the bankruptcy court granted her motion to convert to chapter 11. On the petition date, Debtor owned four real properties: a residence in

Rules of Bankruptcy Procedure.

Calabasas, California, and three rental properties located in Henderson, Nevada, Camarillo, California, and Carmel, California, respectively.

The bankruptcy court confirmed Debtor's second amended plan of reorganization on April 15, 2013. Under the confirmed plan, Debtor was to keep her real properties, pay allowed secured claims in full, and pay a total of $50,000 to unsecured creditors. The plan provided that the claims secured by her rental properties would be stripped down to the value of each property and those claims bifurcated into secured and unsecured portions or, in the case of the junior lien on the Henderson property, avoided altogether.

In addition, Debtor disputed most of the claims secured by her real property. Shortly before the plan was confirmed, Debtor filed adversary proceedings challenging the secured claims of four creditors: Nationstar Mortgage, LLC ("Nationstar") (Carmel property); Green Tree Servicing, LLC (junior lien on Henderson property); Wells Fargo Bank, N.A., as Trustee for Structured Adjustable Rate Mortgage Loan Trust Mortgage Pass-Through Certificates, Series 2005-17 ("Wells Fargo") (senior lien on Henderson property); and The Bank of New York Mellon fka The Bank of New York, as Successor Trustee to JP Morgan Chase Bank, N.A., as Trustee for the Holders of SAMI II Trust 2006-AR6, Mortgage Pass-Through Certificates, Series 2006-AR6 ("BONYM") (Camarillo property). Under the plan, Debtor was to segregate payments owed to the holders of disputed secured claims into a reserve account and then pay those claims if they

3

were allowed. She has not prevailed in any of those adversary proceedings, some of which were still pending when the case was converted to chapter 7.

During the pendency of the plan, Debtor sold the Henderson rental property; Wells Fargo was paid the amount of its payoff demand through escrow, and Debtor retained the net proceeds. Additionally, the bankruptcy court entered judgment in favor of BONYM in the adversary proceeding, effectively allowing BONYM's $1.4 million claim. That judgment was affirmed on appeal.[2]

**B.     Post-Conversion Events**

The case was converted to chapter 7 on April 29, 2019, on motion of BONYM, based on Debtor's default under the terms of the confirmed plan: Debtor had failed to pay anything on BONYM's secured claim despite having lost her challenges to that claim.[3]

After conversion, Debtor turned over to the estate $533,307.62, which she asserted represented the payments reserved over the course of the chapter 11 case for payment of the disputed claims of Nationstar and BONYM (the "Disputed Funds").

In July 2019, despite having been paid the amount of its payoff demand from the sale of the Henderson property, Wells Fargo filed an

---

[2] The judgment was affirmed by the District Court and the Ninth Circuit; the Supreme Court denied Debtor's petition for a writ of certiorari.

[3] The conversion order was affirmed by the District Court in January 2021 and is currently on appeal at the Ninth Circuit Court of Appeals.

amended proof of claim for an unsecured claim of $839,944.84 ($647,065.93 of principal plus costs and attorneys' fees). The Rule 3001(c)(2)(A) statement attached to the amended proof of claim indicated that the claim was subject to revision, stating that the secured portion of the principal balance had been paid, but the creditor was still reviewing the legal effect of conversion.

### 1. The Turnover Order

After conversion, Debtor failed to comply fully with Trustee's requests for information made at the initial § 341(a) meeting of creditors, and she failed to respond to Trustee's repeated demands for turnover of estate assets. As a result, about two months after conversion, Trustee filed a motion for turnover of property of the estate, including the Carmel and Camarillo properties and associated rents and the proceeds from the sale of the Henderson property. Debtor opposed the motion, taking the position that the assets sought by Trustee were not property of the estate because they had revested in Debtor upon confirmation of her chapter 11 plan and that conversion did not restore the assets to the estate. The bankruptcy court rejected this argument and granted Trustee's motion, ordering Debtor to turn over the Carmel, Camarillo, and Calabasas properties and $315,078.12 from the sale of the Henderson property ("Turnover Order").[4]

---

[4] Debtor's plan provided that confirmation would vest all property of the estate in the Debtor but was silent as to the impact of any post-confirmation conversion.

In its turnover ruling, the bankruptcy court found that Local Bankruptcy Rule

5

Debtor appealed the Turnover Order to the District Court (Case No. 20-cv-4338-MWF) and requested a stay pending appeal from the bankruptcy court, which was denied. The District Court also denied a stay pending appeal and affirmed the Turnover Order in an opinion issued January 25, 2021. Debtor appealed that decision to the Ninth Circuit (Appeal No. 21-55076), where it remains pending. In February 2021, after being informed that a sale of the Carmel property was imminent, the District Court granted a stay pending appeal of the Turnover Order. In the same order, the District Court also granted Debtor's motion to stay the order approving the sale of the Carmel property--which had been denied by the bankruptcy court--despite the fact that the appeal of that order was pending with this Panel.[5] The District Court subsequently issued an Order

3020-1(d) operates as a default provision. That rule (in its current version—it is unknown whether this is the same version that was in effect in April 2013, when the plan was confirmed) requires that the confirmation order include:

> a provision, consistent with 11 U.S.C. § 1141(b), that, unless otherwise provided for in the plan, if the case is converted to one under chapter 7, the property of the reorganized debtor, or of any liquidation or litigation trust, or of any other successor to the estate under the plan, that has not been distributed under the plan will be vested in the chapter 7 estate, except for property that would have been excluded from the estate if the case had always been one under chapter 7."

The bankruptcy court also concluded that Debtor's argument that the property did not revest in the estate upon conversion was contrary to Ninth Circuit authority, including *Pioneer Liquidating Corp. v. United States Tr.* (*In re Consolidated Pioneer Mortgage Entities*), 264 F.3d 803 (9th Cir. 2001).

[5] The District Court's stay order notes that the bankruptcy court had approved a

Setting Bond Amount for Stay Pending Appeal, which required Debtor to post a $100,000 bond and to pay the monthly mortgage payments on her Calabasas residence. The latter order also required Trustee to release certain disputed funds to Nationstar and BONYM (as called for in the settlement agreement, discussed below).

### 2. Trustee's Settlement with the Rental Lenders (BAP No. CC-20-1278-LGT)

In the meantime, Trustee negotiated a settlement with Nationstar, BONYM, and Wells Fargo (collectively, the "Rental Lenders"). On February 21, 2020, Trustee filed a motion to approve compromise under Rule 9019. The relevant terms of the settlement agreement are as follows:

**Nationstar**

- Nationstar shall be allowed a secured claim of $1.4 million, an unsecured claim of $363,971.08, and an administrative claim of $44,211.75 (for post-petition, pre-conversion property taxes).

- Trustee shall turn over to Nationstar $73,854.10 of the Disputed Funds.

- Trustee shall market and sell the Carmel property; Nationstar agrees to a carve-out of its secured claim sufficient to provide a net recovery of $75,000 to the estate.

---

sale of the Carmel property and found that, although Debtor was unlikely to prevail on appeal, Debtor would be irreparably harmed by that sale, despite evidence that the Carmel property was seriously overencumbered and was not Debtor's residence.

7

- Trustee shall assign to Nationstar all claims held by the estate and will stipulate to a judgment in Nationstar's favor in the pending adversary proceeding (Adv. No. 1:13-ap-01069-MB).

**BONYM**

- BONYM shall be allowed a secured claim of $1,145,000, an unsecured claim of $403,359.65, and an administrative claim of $41,150.67 (for pre-conversion property tax advances).
- Trustee shall turn over to BONYM $60,652.55 of the Disputed Funds.
- Trustee shall market and sell the Camarillo property; BONYM agrees to a carve-out of its secured claim sufficient to provide a net recovery of $75,000 to the estate.
- Trustee shall assign to BONYM all claims held by the estate and will dismiss the second adversary proceeding pending against BONYM (Adv. No. 1:19-ap-01037-MB).[6]

**Wells Fargo**

- Wells Fargo shall be allowed an unsecured claim of $450,000.
- Trustee shall assign to Wells Fargo all claims held by the estate.

Debtor objected to approval of the compromise, arguing that: (1) the settlement would not benefit unsecured creditors because the funds

[6] Shortly before conversion, Debtor filed a second adversary proceeding against BONYM (and others) seeking a declaration that BONYM was no longer a claimant in the bankruptcy case and that any amounts to be paid to BONYM should be reduced to reflect the amount of debt forgiveness reported to the taxing authorities.

generated would pay only the Rental Lenders and Trustee; (2) approval would moot the appeal of the Turnover Order; (3) the motion was premature as to the Carmel property because that property was held by Debtor and her husband in joint tenancy, and the court would have to rule that the property is community property before escrow could close; (4) the sale of the Carmel property would potentially result in income tax liability to Debtor and her spouse; and (5) there was no rationale for the proposed settlement with Wells Fargo because Wells Fargo had been paid from the sale of the Henderson property in accordance with its payoff demand, and under California law a creditor may only recover amounts in excess of its payoff demand under an unjust enrichment theory, which requires that the borrower know of the creditor's mistake. Debtor requested that the court either deny the motion without prejudice or continue the hearing so Trustee could resolve the identified issues and Debtor could seek a stay of the Turnover Order.

Debtor's husband, James Baroni, also filed an opposition to the motion to approve compromise, arguing that it would negatively impact his rights because he had a community interest in the estate's claims against the Rental Lenders. The court gave Mr. Baroni an opportunity to invoke his right of first refusal under § 363(i). He did not do so, nor has he participated in this appeal.

After hearing argument, the bankruptcy court issued findings and conclusions and an order approving compromise ("Compromise Order").

9

The court found that resolution of the disputes with the Rental Lenders would avoid substantial litigation expenses, and that under the settlement the estate would receive at least $458,311 and might receive $608,311 or more if the Carmel and Camarillo properties were sold. After analyzing the appropriate factors, the court found the settlement fair and equitable and in the best interests of the estate and that entering into the agreement was a proper exercise of Trustee's business judgment. The court also made a good faith finding pursuant to § 363(m) as to each of the Rental Lenders.

The bankruptcy court also found that Debtor lacked standing to object to the settlement because she failed to demonstrate that she had a pecuniary interest in it, i.e., that there would be a surplus estate or that the agreement affected her exempt property or involved any nondischargeable claims. Debtor timely appealed the Compromise Order.

### 3. The Sale Order (BAP No. CC-20-1279-LGT)

While the motion to compromise was under consideration, Trustee found a buyer for the Carmel property and filed a motion to approve the sale for $1.4 million, free and clear of liens, subject to overbid. Sale proceeds remaining after closing costs, property taxes, and real estate commissions were to be applied to the obligation secured by Nationstar's deed of trust, subject to the $75,000 carve-out agreed to in the settlement.

Debtor opposed the sale motion on similar grounds as her opposition to the settlement, arguing that the sale was premature, the property was not property of the estate, and the tax consequences of the sale needed to

10

be addressed. She also asserted that there was insufficient notice to potential overbidders, and there should be further disclosure about the relationship among the buyer, Trustee, and their respective brokers. As with the compromise motion, she asked the court to deny the motion without prejudice or to continue the matter. Mr. Baroni was served with the motion and hearing notice but did not file an opposition or appear at the hearing. At the December 9, 2020, hearing, the bankruptcy court overruled Debtor's objections, again finding that she lacked standing to oppose the sale because she lacked any pecuniary interest in the outcome. The court entered written findings and conclusions and an order approving the sale on December 16, 2020, which included a § 363(m) good faith finding (the "Sale Order"). The court also denied a motion for stay pending appeal but, as noted, the District Court has stayed the order.

Debtor timely appealed the Sale Order.[7]

---

[7] The parties filed unopposed Requests for Judicial Notice in both appeals. In 20-1278, Trustee requested the Panel take judicial notice of the District Court's order setting the bond amount for the stay pending appeal, and Debtor requested we take judicial notice of the District Court's order affirming the Turnover Order and the District Court's order granting a stay pending appeal. In 20-1279, Trustee requested the Panel take judicial notice of: (1) the bankruptcy court's order granting the turnover motion; (2) the bankruptcy court's amended findings and conclusions regarding the turnover motion; (3) the District Court's order affirming the Turnover Order; (4) Debtor's schedules and statement of financial affairs; and (5) Debtor's second amended disclosure statement and plan of reorganization filed March 20, 2013. Debtor requested the Panel take judicial notice of the District Court's order granting a stay pending appeal.

We may take judicial notice of documents filed in the bankruptcy case, and we

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(N) and (O). We have jurisdiction under 28 U.S.C. § 158.

## ISSUES

Does Debtor have standing to appeal?

Did the bankruptcy court abuse its discretion in approving the compromise?

Did the bankruptcy court abuse its discretion in approving the sale of the Carmel property?

## STANDARDS OF REVIEW

Standing is an issue of law that we review de novo. *Palmdale Hills Prop., LLC v. Lehman Com. Paper, Inc. (In re Palmdale Hills Prop., LLC)*, 654 F.3d 868, 873 (9th Cir. 2011). Whether Debtor satisfies the "person aggrieved" test is a question of fact that we review for clear error. *Id.*

"De novo review requires that we consider a matter anew, as if no decision had been made previously." *Francis v. Wallace (In re Francis)*, 505 B.R. 914, 917 (9th Cir. BAP 2014). Factual findings are clearly erroneous if they are illogical, implausible, or without support in the record. *Retz v. Samson (In re Retz)*, 606 F.3d 1189, 1196 (9th Cir. 2010). If two views of the

---

do so here. *See Atwood v. Chase Manhattan Mortg. Co. (In re Atwood)*, 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003). As for the documents filed in the District Court, they are relevant to our analysis of Debtor's standing, the preclusive effect of the Turnover Order, and Debtor's mootness arguments. Accordingly, we grant the respective requests.

evidence are possible, the court's choice between them cannot be clearly erroneous. *Anderson v. City of Bessemer City*, 470 U.S. 564, 574 (1985).

We review for abuse of discretion a bankruptcy court's order approving a compromise, *Debbie Reynolds Hotel & Casino, Inc. v. Calstar Corp. (In re Debbie Reynolds Hotel & Casino, Inc.)*, 255 F.3d 1061, 1065 (9th Cir. 2001), and an order approving a sale of estate property under § 363, *Clear Channel Outdoor, Inc. v. Knupfer (In re PW, LLC)*, 391 B.R. 25, 32 (9th Cir. BAP 2008). To determine whether the bankruptcy court has abused its discretion, we conduct a two-step inquiry: (1) we review de novo whether the bankruptcy court "identified the correct legal rule to apply to the relief requested," and (2) if it did, we consider whether the bankruptcy court's application of the legal standard was illogical, implausible, or without support in inferences that may be drawn from the facts in the record. *United States v. Hinkson*, 585 F.3d 1247, 1262-63 & n.21 (9th Cir. 2009) (en banc).

## DISCUSSION

### A.   Standing

The bankruptcy court found that Debtor lacked standing to object to the respective motions underlying the orders on appeal because she had no pecuniary interest in the outcome, i.e., she had not demonstrated that there would be a surplus estate. Based on that finding, Trustee argues that Debtor lacks standing to appeal those orders. Although Debtor risked waiving the issue by failing to address it in her opening brief, *see Smith v.*

*Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999), we have an independent duty to consider whether a party has standing, *Aheong v. Mellon Mortg. Co. (In re Aheong)*, 276 B.R. 233, 238 (9th Cir. BAP 2002). We will thus address the issue.

"A federal court may exercise jurisdiction over a litigant only when that litigant meets constitutional and prudential standing requirements." *Veal v. Am. Home Mortg. Servicing, Inc. (In re Veal)*, 450 B.R. 897, 906 (9th Cir. BAP 2011) (citing *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 11 (2004)). Constitutional standing requires an injury in fact that is caused by or fairly traceable to some conduct, and which the requested relief will likely redress. *Id.* (citing *Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269, 273-74 (2008)) (additional citations omitted).

"The prudential standing doctrine or the 'person aggrieved test' provides that '[o]nly those persons who are directly and adversely affected pecuniarily by an order of the bankruptcy court . . . have standing to appeal that order.'" *In re Palmdale Hills Prop., LLC*, 654 F.3d at 874 (quoting *Fondiller v. Robertson (In re Fondiller)*, 707 F.2d 441, 442 (9th Cir. 1983)).

In her reply brief, Debtor conceded that the bankruptcy estate is likely insolvent. But she maintains that she has standing to appeal because the orders on appeal impact assets that she contends belongs to her. This argument succeeds only if the Turnover Order--which contains the finding that the property at issue belongs to the estate--is reversed on appeal. While that has not yet happened, and may not ever happen, we will not

dismiss this appeal for lack of standing. If the Ninth Circuit reverses the bankruptcy court's finding, the orders on appeal would negatively impact Debtor's property interests, and there would be no question that Debtor would have both constitutional and prudential standing.[8]

**B.  The bankruptcy court did not abuse its discretion in approving the settlement.**

A bankruptcy court has great latitude in authorizing a compromise and generally defers to a trustee's business judgment in deciding whether to settle a matter. *Goodwin v. Mickey Thompson Ent. Grp., Inc. (In re Mickey Thompson Ent. Grp., Inc.)*, 292 B.R. 415, 420 (9th Cir. BAP 2003). Nevertheless, before authorizing a compromise, the bankruptcy court must find that it is fair and equitable to creditors, in the best interests of the estate, and reasonable in the circumstances. *Id.* In determining whether the compromise is fair, reasonable, and adequate, the bankruptcy court must consider:

---

[8] As far as the bankruptcy court is concerned, its finding that the property at issue belongs to the estate, which was affirmed by the District Court, is law of the case. This doctrine ordinarily precludes a court "from reexamining an issue previously decided by the same court, or a higher court, in the same case." *Delannoy v. Woodlawn Colonial, L.P. (In re Delannoy)*, 615 B.R. 572, 583 (9th Cir. BAP 2020) (quoting *Richardson v. United States*, 841 F.2d 993, 996 (9th Cir. 1988) (citations omitted), *amended*, 860 F.2d 357 (9th Cir. 1988)). So we cannot say that the bankruptcy court erred in concluding that Debtor lacked standing to object. At the same time, this is the rare instance where dismissing the appeal for lack of standing does not make sense due to the potential "domino effect" of a future reversal of the Turnover Order.

(a) The probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; [and] (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises.

*Martin v. Kane (In re A & C Props.)*, 784 F.2d 1377, 1380 (9th Cir. 1986).

Here, the bankruptcy court made all the appropriate findings under the legal standards articulated above. Debtor does not argue otherwise. But she contends that it was error for the bankruptcy court to approve the settlement because it requires the sale of properties that she contends are not property of the estate. But that issue is not before us in this appeal.

Debtor also argues that the sale of the Carmel property proposed in the settlement was premature because the bankruptcy court had not adjudicated whether the Carmel property was community property. This argument is inapplicable to the Compromise Order, which merely approved the settlement but did not approve the sale. In any event, although Mr. Baroni filed an objection to the settlement, asserting a community interest in the estate's claims against the Rental Lenders, he did not assert a community interest in the Carmel property, nor has he done so in these appeals.

Next, Debtor argues that the settlement will not benefit unsecured creditors because all funds generated will go to the Trustee, his professionals, secured creditors, and to Wells Fargo's $400,000 unsecured

16

claim (as compromised), which she notes was never litigated or substantiated. Trustee correctly points out that Debtor's argument fails to take into account the overall impact of the settlement and corresponding sales, which permit the estate to retain over half a million dollars of Disputed Funds, receive $150,000 from agreed carve-outs, and resolve several pending adversary proceedings, thus saving the estate litigation costs and delay.

With respect to the Wells Fargo claim, that claim was reduced by more than 50% pursuant to the settlement, which avoided the cost and delay inherent in litigating the issue of whether Wells Fargo could assert an additional claim after having been paid the amount of its demand from the sale of the Henderson property. Debtor essentially concedes that this issue would require litigation, and she also acknowledges that Wells Fargo will likely receive only a "tiny" distribution. In approving the settlement, the bankruptcy court rejected Debtor's argument that there were cognizable theories under which the Trustee could have objected to Wells Fargo's claim:

> The Trustee does not argue that there is no basis to object to Wells Fargo's claim. He disputes all of the Rental Lenders' proofs of claim, including Wells Fargo's, but has decided the settlement of those disputes is in the best interests of the estate. The Trustee is not duty-bound to pursue every possible theory; he is required to maximize the value of the Estate for the benefit of creditors.

17

We agree—the compromise was a valid exercise of Trustee's business judgment. That he chose not to litigate the Wells Fargo claim and instead to accept a 50% reduction in that claim is the very essence of compromise. Debtor has not shown how, in the context of the overall settlement, Trustee's choice to settle the Wells Fargo claim rendered the settlement unfair, unreasonable, or inadequate. In short, Debtor fails to demonstrate that the bankruptcy court's finding that the settlement was in the best interests of the estate was erroneous.

Debtor also contends that affirming the Compromise Order will moot the Turnover Order and thus the Compromise Order should be reversed or this appeal stayed. But the Compromise Order has no direct impact on the pending appeal of the Turnover Order—the Compromise Order simply approved an agreement that has yet to be performed (except on a limited basis as ordered by the District Court). The pending appeal of the Turnover Order is thus not a valid basis upon which to reverse the Compromise Order or to stay this appeal.

C.  **The bankruptcy court did not abuse its discretion in approving the sale of the Carmel property.**

Under § 363(b), a trustee may sell property of the estate outside the ordinary course of business. Such property may be sold free and clear of liens if any one of five conditions is met.[9] § 363(f). Here, it is undisputed

---

[9] Section 363(f) provides:

that lienholders either consented to the sale or, with respect to liens subject to bona fide dispute, those lienholders were given notice of the sale and did not object. Moreover, Mr. Baroni was given an opportunity to invoke his rights under § 363(i)[10] and failed to do so.

In § 363(b) sale motions, the bankruptcy court's obligation "is to assure that optimal value is realized by the estate under the circumstances." *Simantob v. Claims Prosecutor, LLC (In re Lahijani)*, 325 B.R. 282, 288 (9th Cir. BAP 2005). Here, the bankruptcy court found that the property had been adequately marketed, no party had submitted an overbid, and the sale was "proposed and negotiated in good faith and at arm's length and is in the best interests of the estate and its creditors." Given that the Carmel property is overencumbered, the fact that the sale will net $75,000 for the estate supports the bankruptcy court's approval of the motion.

---

(f) The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if--
    (1) applicable nonbankruptcy law permits sale of the property free and clear of such interest;
    (2) such entity consents;
    (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
    (4) such interest is in bona fide dispute; or
    (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

[10] Section 363(i) provides, "Before the consummation of a sale of . . . property of the estate that was community property of the debtor and the debtor's spouse immediately before the commencement of the case, the debtor's spouse . . . may

19

Debtor first contends that approval of the sale was premature because the issue of whether the Carmel property is property of the estate has not yet been resolved due to the pending Ninth Circuit appeal of the Turnover Order. But that finding, which was affirmed by the District Court, is not before this Panel.

Second, she argues that the court should have made an explicit determination that the Carmel property was community property, given that she and her husband held title to the property as joint tenants. But she did not make this argument to the bankruptcy court. Thus, we need not consider it. *See O'Rourke v. Seaboard Surety Co. (In re E.R. Fegert, Inc.)*, 887 F.2d 955, 957 (9th Cir. 1989) (appellate court will not consider arguments not properly raised in the trial court). We note that Debtor scheduled the Carmel property as community property, which arguably estops her from asserting otherwise now. Additionally, it is undisputed that Mr. Baroni was given adequate notice of the sale and did not object.

Finally, Debtor argues that the sale will not benefit unsecured creditors because virtually the entire $75,000 generated from the sale will be paid to Trustee, his professionals, and Nationstar. We have addressed this issue in our analysis of the Compromise Order. In any event, Debtor provides no specifics or evidence as to why the bankruptcy court's finding that the sale was in the best interests of the estate was erroneous. As with

purchase such property at the price at which such sale is to be consummated."

the Compromise Order, the record supports the bankruptcy court's findings underlying its approval of the sale.

## CONCLUSION

For these reasons, the bankruptcy court did not abuse its discretion in approving either the compromise or the sale. Accordingly, we AFFIRM.