**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

CITY OF ALMATY, a foreign state,
*Plaintiff-Appellant*,

v.

VIKTOR KHRAPUNOV, an individual;
LEILA KHRAPUNOV, an individual;
ILIYAS KHRAPUNOV, an individual;
MADINA ABLYAZOVA, AKA Madina
Khrapunova, an individual;
CROWNWAY, LTD., a Belize
corporation; VILDER COMPANY S.A.,
a Panama corporation; RPM USA,
LLC, a New York corporation;
WORLD HEALTH NETWORKS, INC.,
FKA Health Station Networks, Inc.,
a Delaware corporation; RPM-
MARO, LLC, a New York
corporation; DANIEL KHRAPUNOV, an
individual; MARO DESIGN LLC, a
California corporation; THIRTYEIGHT
ENTERPRISES, LLC, a California
Corporation; HAUTE HUE LLC, a
California corporation; 628
HOLDINGS LLC, a California
corporation; CANDIAN
INTERNATIONAL LTD., a British
Virgin Islands corporation; ELVIRA
KHRAPUNOV, as Trustee for The

No. 18-56451

D.C. Nos.
2:14-cv-03650-
FMO-FFM
2:15-cv-02628-
FMO-CW

OPINION

Kasan Family Trust; DMITRI
KUDRYASHOV, AKA Dmitry
Kudryashov, an individual, and as
Trustee for The Kasan Family Trust,
*Defendants-Appellees.*

Appeal from the United States District Court
for the Central District of California
Fernando M. Olguin, District Judge, Presiding

Argued and Submitted February 4, 2020
Pasadena, California

Filed April 22, 2020

Before:  Sandra S. Ikuta and Morgan Christen, Circuit
Judges, and Algenon L. Marbley,[*] District Judge.

Opinion by Judge Marbley

---

[*] The Honorable Algenon L. Marbley, United States Chief District
Judge for the Southern District of Ohio, sitting by designation.

# SUMMARY**

## Racketeer Influenced and Corrupt Organizations Act

The panel affirmed the district court's dismissal for failure to state a claim of an action brought under the Racketeer Influenced and Corrupt Organizations Act by a city in Kazakhstan.

The city alleged that Victor Khrapunov and his family engaged in a scheme to defraud it of millions of dollars. After absconding with the money to Switzerland, the family allegedly began laundering the money into property and other investments in the United States. The city alleged that it was forced to spend money and resources in the United States to trace where its money was laundered.

The panel held that the city failed to state any cognizable injury other than the foreign theft of its funds, and its voluntary expenditures in the United States were not proximately caused by defendants' alleged acts of money laundering. Accordingly, the city failed to state a RICO claim.

** This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Richard P. Bress (argued) and Margaret A. Upshaw, Latham & Watkins LLP, Washington, D.C.; David J. Schindler and Kendall M. Howes, Latham & Watkins LLP, Los Angeles, California; for Plaintiff-Appellant.

Martha Boersch (argued) and Matthew C. Dirkes, Boersch Shapiro LLP, Oakland, California, for Defendants-Appellees.

Matthew L. Schwartz, Boies Schiller Flexner LLP, New York, New York, for Amici Curiae Anti-Money Laundering Experts.

**OPINION**

MARBLEY, District Judge:

The City of Almaty, in Kazakhstan, alleges that Victor Khrapunov and his family engaged in a scheme to defraud the city of millions of dollars. After absconding with the money to Switzerland, the family allegedly began laundering the money into property and other investments in the United States. Almaty brought suit pursuant to 18 U.S.C. § 1964(c), alleging that it was forced to spend money and resources in the United States to trace where its money was laundered. The district court dismissed Almaty's claim on the basis that it failed to state a domestic injury pursuant to the Supreme Court's recent decision in *RJR Nabisco, Inc. v. European Community*, 136 S. Ct. 2090 (2016), holding that the presumption against extraterritoriality applies to the civil remedy of the Racketeer Influenced and Corrupt Organizations Act. The City of Almaty appeals the district

court's decision arguing that its injury was domestic. We affirm the district court's decision since Almaty failed to state any cognizable injury other than the foreign theft of its funds and since its voluntary expenditures were not proximately caused by Appellees' acts of money laundering.

## BACKGROUND

Appellant, the City of Almaty, (hereinafter "Plaintiff" or "Almaty"), is the largest in the Republic of Kazakhstan. From 1997 until December 2004, Victor Khrapunov served as its mayor. According to Almaty, Khrapunov oversaw the privatization of much of its real estate while he was mayor. During the process, however, Khrapunov allegedly abused his power by rigging auctions for properties so that his wife, Leila Khrapunova, and children, Iliyas Khrapunov and Elvira Kudryashova, could purchase these properties through shell entities at drastically reduced prices.

Appellees, (hereinafter "the Khrapunovs" or "Defendants"), fled Kazakhstan for Switzerland around 2007, taking the proceeds from the sale of the government properties with them. Kazakh authorities traced the allegedly stolen proceeds to Switzerland and informed Swiss authorities. Swiss authorities began an investigation into the Khrapunovs for money laundering and froze the Khrapunovs' Swiss bank accounts.

In 2010, Elvira and her husband left Switzerland for the United States, where they purchased a home in Beverly Hills, California. Almaty alleges that this home, along with other real estate and property in California, was purchased using the stolen proceeds. According to Almaty, the Khrapunovs increased their efforts to launder money into the United States as the Swiss investigations against them intensified in 2012. In early 2012 and 2013, Almaty alleges

that Iliyas and his wife used several shell companies to purchase two homes in Beverly Hills, California. In addition to using the stolen funds to launder the money into real estate in the United States, Almaty alleges that Elvira made "sham business investments" in the United States as a means of securing "under false pretenses U.S. visas for Elvira" and her husband. Almaty also alleges that the Khrapunovs cycled the stolen money in and out of California real estate and other investments in order to prevent Almaty from locating and recovering the funds.

In 2014, Almaty filed the instant lawsuit alleging RICO violations by the Khrapunovs as well as violations of U.S. mail, wire and bank fraud, anti-money laundering, and Travel Act statutes, in addition to various state law claims including fraud, conversion, and breach of fiduciary duty. In 2015, Almaty and a state-owned Kazakh bank, BTA Bank, also brought suit against the Khrapunovs and others in the Southern District of New York, bringing RICO claims for money laundering the stolen proceeds, along with other claims against another defendant. *City of Almaty, Kazakhstan v. Ablyazov*, No. 15-CV-5345 (AJN), 2018 WL 3579100 (S.D.N.Y. July 25, 2018). The Southern District of New York dismissed the case for failure to allege a plausible domestic injury, determining that the money laundering in the United States did not turn the plaintiffs' injuries into domestic ones where the alleged misappropriations occurred in Kazakhstan. *Id.* at *5.

Since filing the instant lawsuit in 2014, Almaty has amended the complaint several times. The first consolidated complaint, which is the operative complaint and at issue in this proceeding, was filed in January 2018. The Khrapunovs moved to dismiss the first consolidated complaint in February 2018. The district court granted the motion to

dismiss the RICO claims with prejudice in September 2018, determining that Almaty failed to allege a domestic injury. After the court entered judgment, Almaty appealed.

## JURISDICTION AND STANDARD OF REVIEW

This Court has jurisdiction under 28 U.S.C. § 1291. We review a district court's order granting a motion to dismiss for failure to state a claim *de novo*. *Palm v. Los Angeles Dep't of Water & Power*, 889 F.3d 1081, 1085 (9th Cir. 2018). The plaintiff's factual allegations are taken as true, and dismissal is affirmed "only if it appears beyond doubt that [plaintiff] can prove no set of facts in support of [its] claims which would entitle [it] to relief." *Painters & Allied Trades Dist. Council 82 Health Care Fund v. Takeda Pharm. Co. Ltd.*, 943 F.3d 1243, 1248 (9th Cir. 2019) (citation and internal quotation marks omitted).

## ANALYSIS

Plaintiff asks that we reverse the district court's dismissal of its complaint. Plaintiff argues that it has alleged a domestic injury pursuant to 18 U.S.C. § 1964(c) by alleging that it was "compelled . . . to expend additional resources in the United States to find its stolen assets in the United States." Defendants urge us to affirm the district court's decision, arguing that there are two reasons why Almaty cannot bring a civil RICO claim. First, Defendants argue that Almaty has failed to allege a viable domestic injury. Second, Defendants argue that Plaintiff lacks standing to bring its claim, because one of our prior decisions forecloses civil RICO claims brought by governments in their sovereign capacity.

First, Plaintiff argues that Defendants' act of laundering money into the United States forced it to spend money to

investigate and locate its stolen money in the United States. According to the City of Almaty, this is a domestic injury to its property pursuant to 18 U.S.C. § 1964(c), the provision of the Racketeer Influenced and Corrupt Organizations Act (hereinafter "Civil RICO") permitting individuals to bring civil suit after being harmed by a violation of the statute.

Defendants argue that the Supreme Court implicitly rejected a definition of domestic injury that includes spending money and time to "trace and recover . . . stolen funds hidden in the United States" in *RJR Nabisco, Inc. v. European Community*, 136 S. Ct. 2090 (2016). According to Defendants, one of the primary allegations made by the European Community in *RJR Nabisco* was that illegal drug proceeds were laundered into the United States. Defendants claim that since the European Community expended funds in the U.S. in pursuit of its legal claims, and no one in that case suggested that such voluntary expenditures could constitute domestic injury, the Supreme Court implicitly determined that those were not domestic injuries.

The Supreme Court's decision in *RJR Nabisco*, however, does not address, either explicitly or implicitly, whether the injuries alleged in that case were domestic or foreign. In *RJR Nabisco*, the Supreme Court only determined that the presumption against extraterritorial application of statutes applies to 18 U.S.C. § 1964(c). The terms of the Civil RICO statute permit "[a]ny person injured in his business or property by reason of a violation of § 1962" to recover treble damages. *RJR Nabisco* clarified that injuries must be domestic but declined to decide the question of how to determine whether injuries are "foreign" or "domestic" because the European Community had stipulated that all the injuries they alleged were foreign. 136 S. Ct. at 2111. Thus, *RJR Nabisco* provides little guidance as to how to resolve

the question of whether the injuries alleged here are domestic or foreign.

The Ninth Circuit has not yet addressed the question of how to determine whether an injury is domestic or foreign after *RJR Nabisco*, and we need not do so today. That is because Plaintiff's alleged injury is merely a consequential effect of its admittedly foreign injury, and not an independent injury cognizable under § 1964(c).

To state a claim under RICO, a plaintiff is required to show harm to a specific business or property interest, an inquiry "typically determined by reference to state law." *Diaz v. Gates*, 420 F.3d 897, 900 (9th Cir. 2005) (en banc). In *Diaz*, we determined that financial loss alone is insufficient to state a claim, noting that there must be an injury to a "business or property interest." *Id.* Plaintiff alleges that its property, here money, was injured by reason of the Khrapunovs' acts of money laundering in the U.S., because it spent money to trace its already stolen funds. But, there is no state law indicating that voluntary expenditures to track down stolen property constitutes a separate injury to property. And, while California does recognize the tort of conversion,[1] the injuries caused by that tort encompass the injury Plaintiff alleges was caused by money laundering, "fair compensation for the time and money properly expended in pursuit of the property." Cal. Civ. Code § 3336. Therefore, the district court properly determined that Plaintiff's alleged injury was a mere downstream effect of the Khrapunovs' initial theft and not an independent harm itself.

---

[1] *See Lee v. Hanley*, 354 P.3d 334, 344 (Cal. 2015) ("Conversion is the wrongful exercise of dominion over the property of another.").

Plaintiff also fails to satisfy the proximate cause inquiry. That is, it cannot show that Defendants' predicate act of money laundering was the actual cause of its expenditure of money. Proximate cause requires "some direct relation between the injury asserted and the injurious conduct alleged." *Holmes v. Sec. Inv'r Prot. Corp.*, 503 U.S. 258, 268 (1992). Plaintiff argues that money is a form of property and consequently, its expenditures to track the laundered money constitutes an injury to property, citing our decisions in *Harmoni Int'l Spice, Inc. v. Hume*, 914 F.3d 648 (9th Cir. 2019) and *Canyon Cty. v. Syngenta Seeds, Inc.*, 519 F.3d 969, 976 (9th Cir. 2008). In *Harmoni*, plaintiffs were Chinese garlic importers who brought a civil RICO action after their competitors made sham filings requesting an administrative review of Harmoni's business. 914 F.3d at 650. We determined that plaintiffs stated a viable injury— being "forced to incur significant expenses responding to the administrative review"—and that the injury was proximately caused by defendant's sham filings because "refusing to respond was not a viable option" since it would result in prohibitively high import duties. *Id.* at 652. We noted that "this is not a case in which the Department of Commerce acted independently to initiate an investigation, which would perhaps have been an intervening act that broke the causal chain," finding it determinative that the Department of Commerce was required by law to initiate an administrative review when it receives a request for review from a party with standing. *Id*.

Plaintiff also relies on *Canyon County*, where we decided that a government's expenditures on healthcare and policing services are not an injury to business or property because the government does not have a property interest in the services it provides to enforce law and promote public welfare. 519 F.3d at 976. We specifically noted, however, a

line of cases indicating that forced expenditures made in a state's commercial capacity state an injury to property. *Id.* We relied on the Supreme Court's decision in *Reiter v. Sonotone Corp.*, 442 U.S. 330, 342 (1979), and other cases where government entities overcharged in commercial transactions could claim injury to their property. *See* 519 F.3d at 976.

Unlike in *Harmoni* and *Canyon County*, however, Plaintiff has not shown that it was forced to spend its money or that it was otherwise shortchanged by Defendants' actions in the United States. Plaintiff points to no legal obligation to track its money nor evidence that it would otherwise be unable to collect the money it is owed. Furthermore, upon obtaining a legal judgment anywhere in the world against Defendants, Plaintiff could bring that judgment to the United States and execute it against any of Defendants' assets for the full amount of money owed. *See, e.g.*, Cal. Civ. Proc. Code § 1716 (permitting the enforcement of foreign judgments in California courts). This is because money is a fungible asset, and not an otherwise unique or irreplaceable piece of property. *See United States v. Sperry Corp.*, 493 U.S. 52, 62 n.9 (1989).

Moreover, there will still be instances where the predicate act of money laundering is so integral to a scheme to deprive a plaintiff of his or her money that he or she can state a domestic injury. In fact, this was the case in *Maiz v. Virani*, 253 F.3d 641 (11th Cir. 2001), where the court determined that money laundering was integral to defendants' scheme to defraud plaintiffs of their money. In *Maiz*, defendants argued that plaintiffs suffered no injury proximately caused by their alleged money laundering because they had committed these acts after plaintiffs had made their initial investments. *Id.* at 673–74. The court

rejected this argument, noting that plaintiffs had made those investments for a specific purpose and defendants had misappropriated and laundered those funds "in order to *conceal* the existence of those profits from the Plaintiffs and, indeed, induce further contributions." *Id.* at 674. In other words, the *Maiz* plaintiffs' monetary losses were not caused by the initial investment, but by the money laundering. Here, Plaintiff was not separately harmed by the money laundering, and the amount allegedly due to it has not been devalued as a result of Defendants' money laundering.

Accordingly, we need not determine whether Plaintiff states a domestic or foreign injury, since it fails to state a cognizable injury at all. The City of Almaty's expenditure of funds to trace its allegedly stolen funds is a consequential damage of the initial theft suffered in Kazakhstan and is not causally connected to the predicate act of money laundering.

Defendants also argue for the first time on appeal that the district court's decision should be affirmed for the separate reason that Almaty lacks standing to bring claims for injuries sustained in its sovereign capacity. A party waives an argument relating to statutory or prudential standing if the argument was not raised in the district court. *See Bilyeu v. Morgan Stanley Long Term Disability Plan*, 683 F.3d 1083, 1090 (9th Cir. 2012). Additionally, because we determine that Almaty failed to allege a cognizable injury, we need not decide this issue.

**AFFIRMED.**