FILED

JUN 6 2023

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT



**NOT FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>HOMESITE HOLDINGS LLC,<br>　　　　　　Debtor. | BAP Nos. SC-22-1112-BSG<br>SC-22-1113-BSG<br>(Related Appeals) |
| HOMESITE HOLDINGS LLC,<br>　　　　　　Appellant,<br>v.<br>RONALD E. STADTMUELLER, Chapter 7<br>Trustee; HOUSHANG AFRAMIAN;<br>SMDL, LLC; T2, LLC; TIFFANY L.<br>CARROLL, Acting United States Trustee,<br>　　　　　　Appellees. | Bk. No. 20-03216-MM7<br><br>**MEMORANDUM**∗ |

Appeal from the United States Bankruptcy Court
for the Southern District of California
Margaret M. Mann, Bankruptcy Judge, Presiding

Before: BRAND, SPRAKER, and GAN, Bankruptcy Judges.

## INTRODUCTION

Appellant, chapter 7[1] debtor Homesite Holdings LLC ("Homesite"),

appeals an order denying its motion to convert its case to chapter 11 under

§ 706(a). The bankruptcy court denied conversion on the basis of bad faith.

---

∗ This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules

1

The underlying motions and appeals[2] were brought by Michael R. Cartwright II, Homesite's sole member and manager, on behalf of Homesite. Appellees Houshang Aframian and chapter 7 trustee Ronald Stadtmueller ("Trustee") have moved to dismiss the appeals, arguing that Cartwright had no authority to bring them on Homesite's behalf. They argue that only Trustee, as Homesite's representative, could bring them. In an effort to remedy this issue, Cartwright has moved to intervene.

We conclude that any argument as to Cartwright's authority to bring the appeals on behalf of Homesite has been waived. We further conclude that the bankruptcy court did not abuse its discretion in denying the motion to convert. Accordingly, the motion to dismiss is DENIED, the motion to intervene is DENIED as moot, and the order denying conversion is AFFIRMED.[3]

## FACTS

Homesite, a New Mexico limited liability company, was formed in 2014. Cartwright became the sole member and manager of Homesite in November 2019.

Cartwright, as managing member, filed Homesite's chapter 7

---

of Bankruptcy Procedure.

[2] Homesite has also appealed the order denying reconsideration of the conversion order, but since we are affirming the conversion order, we need not address whether the bankruptcy court abused its discretion in denying reconsideration.

[3] Trustee's request for judicial notice filed on January 17, 2023, is DENIED. The documents submitted are not relevant to the resolution of the appeal. *See Santa Monica Food Not Bombs v. City of Santa Monica,* 450 F.3d 1022, 1025 n.2 (9th Cir. 2006).

bankruptcy case on June 25, 2020. At the time, Homesite owned four vacant lots in Pacific Palisades, California. The lots were subject to liens held by Aframian and Big A Rancho Santa Fe LLC ("Big A"). Prior to the bankruptcy, Aframian had scheduled a foreclosure sale for three of the lots. Homesite's request for a temporary restraining order ("TRO") and injunction to stop the Aframian sale was denied. According to Cartwright, Homesite had no alternative but to file for bankruptcy to prevent the sale.

Eighteen months into the chapter 7 case, Trustee discovered that the amount Big A loaned to Homesite was potentially far less than the amount stated in the bankruptcy schedules and that Big A's lien might be avoidable. Trustee also discovered that the loan disbursements were not made by Big A but by its principal, and they were not made to Homesite but to one of Cartwright's other entities before he acquired an interest in Homesite. To pursue the Big A matter, Trustee sought approval of loans to fund the litigation to be provided by two unsecured creditors of Homesite.

Before the bankruptcy court ruled on Trustee's borrowing motion, Homesite moved to convert its case to chapter 11 under § 706(a).[4] Citing *Marrama v. Citizens Bank of Massachusetts*, 549 U.S. 365 (2007), Homesite argued that it should be allowed to convert its case to chapter 11. No one had accused it of acting in bad faith or of misconduct in its bankruptcy case, nor had anyone alleged any ground that would warrant reconversion to chapter 7

---

[4] Section 706(a) provides, in relevant part: "The debtor may convert a case under this chapter to a case under chapter 11 . . . at any time, if the case has not been converted under section 1112 . . . ."

3

under § 1112(b) after conversion to chapter 11.

Homesite argued that conversion would be in the best interests of creditors and the estate. The case was more complex than anticipated, particularly given unexpected, multimillion dollar claims and litigation from two unsecured creditors. Cartwright agreed to pay all administrative expenses to date and to fund the examination of all claims, not just Big A's. Homesite would also explore whether financing could be obtained to develop the lots. If not, then its plan would be to sell them and distribute the proceeds to holders of allowed claims. Homesite argued that a liquidation plan would avoid the additional administrative compensation to Trustee.

Several parties objected to conversion, including Aframian and Trustee. Aframian argued that conversion should be denied because Homesite and Cartwright had engaged in bad faith. For example, Aframian discovered the existence of an undisclosed, confidential settlement agreement between Cartwright (and his entities) and Firooz Payan, a former member of Homesite who owed Cartwright money from a prior judgment. The settlement agreement, executed one month after Cartwright filed Homesite's bankruptcy case, provided that the Cartwright entities would pursue litigation against Aframian regarding Homesite's property and that the parties would share equally in any proceeds should the Cartwright entities prevail. Aframian argued that Homesite's property was property of the bankruptcy estate and that Cartwright knew any attempt to transfer it required court approval. He further argued that, because this was an agreement "relating to property of

the estate," Cartwright was required to disclose it under § 521(a)(4). Aframian also argued that the Big A lien was fraudulent and that Cartwright was not cooperating with Trustee in providing documentation concerning it.

Trustee also opposed conversion citing Homesite's bad faith. Trustee argued that the Cartwright settlement agreement, drafted without his knowledge, consent, or permission from the court, impermissibly disposed of estate property. There was also the Big A lien, which Trustee maintained was an avoidable fraudulent transfer. Finally, argued Trustee, Homesite's efforts to convert to chapter 11 nearly two years after filing its chapter 7 case, and on the heels of his Big A lien investigation, evidenced more bad faith.

In reply, Homesite argued that the Cartwright settlement agreement neither affected nor disposed of estate property; rather, it allowed the Cartwright entities to pursue their own fraudulent transfer claims against Aframian. Further, argued Homesite, the settlement agreement stated that it was "conditional" and applied only to the extent the Cartwright entities received any of Homesite's property, which could not happen until the bankruptcy case was resolved and the creditors' claims addressed.

After a hearing, the bankruptcy court denied the motion to convert ("Conversion Order"). It determined that Homesite was ineligible to be a chapter 11 debtor due to Homesite and Cartwright's bad faith. The court's finding was limited to the undisputed facts, namely, the contents and effect of the undisclosed Cartwright settlement agreement and its related litigation, and Homesite's lack of disclosure and transparency about the Big A lien.

Because of these issues, the court said it lacked confidence in Cartwright to comply with his fiduciary duties if he were in control of Homesite as a chapter 11 debtor-in-possession.[5] Homesite timely appealed the Conversion Order and the bankruptcy court's denial of its motion for reconsideration.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A). We have jurisdiction under 28 U.S.C. § 158.

## ISSUES

1. Have appellees waived the argument that Cartwright had no authority to bring the appeals on behalf of Homesite?

2. Did the bankruptcy court abuse its discretion in denying the motion to convert?

## STANDARDS OF REVIEW

Whether an appellant has prudential standing is a question of law we review de novo. *See Motor Vehicle Cas. Co. v. Thorpe Insulation Co. (In re Thorpe Insulation Co.)*, 677 F.3d 869, 879 (9th Cir. 2012).

We review the bankruptcy court's denial of a motion to convert for abuse of discretion. *Levesque v. Shapiro (In re Levesque)*, 473 B.R. 331, 335 (9th Cir. BAP 2012). A bankruptcy court abuses its discretion if it applies an incorrect legal standard or its factual findings are illogical, implausible, or without support in the record. *See TrafficSchool.com, Inc. v. Edriver Inc.*, 653

---

[5] Because Homesite had filed an amended petition for a case under chapter 11 just before the conversion hearing, the Conversion Order, to the extent necessary, also reconverted the case to chapter 7 and reappointed Trustee.

F.3d 820, 832 (9th Cir. 2011).

A bankruptcy court's finding of bad faith is reviewed for clear error. *Khan v. Barton (In re Khan)*, 846 F.3d 1058, 1063 (9th Cir. 2017). Factual findings are clearly erroneous if they are illogical, implausible, or without support in the record. *Retz v. Samson (In re Retz)*, 606 F.3d 1189, 1196 (9th Cir. 2010). "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson v. City of Bessemer City*, 470 U.S. 564, 574 (1985).

"We may affirm on any ground supported by the record, regardless of whether the bankruptcy court relied upon, rejected, or even considered that ground." *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014) (cleaned up).

## DISCUSSION

### A. Appellees waived the argument that Cartwright had no authority to bring the appeals on Homesite's behalf.

Aframian and Trustee have moved to dismiss Homesite's appeal of the Conversion Order. They argue that Cartwright had no authority to seek conversion or appeal the adverse order on Homesite's behalf; only Trustee could do so. Relying on *C.W. Mining Co. v. Aquila, Inc. (In re C.W. Mining Co.)*, 636 F.3d 1257, 1263 (10th Cir. 2011), and *Bear Creek Trail, LLC v. BOKF, N.A., f/k/a Bank of Texas (In re Bear Creek Trail, LLC)*, 35 F.4th 1277, 1281-82 (10th Cir. 2022), they argue that once a chapter 7 trustee has been appointed in a corporate debtor's case, the debtor's former management, corporate officers,

7

directors and shareholders are completely ousted; the only person with authority to act on behalf of the debtor or to bring an appeal on the debtor's behalf is the trustee, and Trustee in this case wants to dismiss the appeal.[6]

One aspect of the prudential standing doctrine for purposes of bankruptcy appellate standing is that the appellant has been "directly and adversely affected pecuniarily" by the bankruptcy court's decision. *Palmdale Hills Prop., LLC v. Lehman Com. Paper, Inc. (In re Palmdale Hills Prop., LLC)*, 654 F.3d 868, 874 (9th Cir. 2011); *Fondiller v. Robertson (In re Fondiller)*, 707 F.2d 441, 442-43 (9th Cir. 1983). Another aspect of prudential standing is that the appellant demonstrate that it is asserting its own legal rights and not those belonging to others. *Veal v. Am. Home Mortg. Servicing, Inc. (In re Veal)*, 450

---

[6] In *C.W. Mining,* an involuntary corporate chapter 11 case was converted to chapter 7 on a creditor's motion. Debtor, through its former managers, opposed the motion and filed an appeal on behalf of debtor following conversion. The chapter 7 trustee moved to dismiss the appeal, arguing that the former managers no longer had authority to act on debtor's behalf. 636 F.3d at 1259.

The Tenth Circuit Court of Appeals held that former managers of a chapter 7 corporate debtor lack authority to bring an appeal on behalf of the debtor corporation over the objection of the chapter 7 trustee. *Id.* at 1265. The circuit court said the question was not whether the debtor had standing as a "person aggrieved," but whether debtor's former managers had authority to appeal on debtor's behalf in light of the trustee's appointment. *Id.* at 1261. The circuit court carved out three exceptions to its ruling. First, corporate managers in a chapter 11 case being converted to chapter 7 may file an appeal on the debtor's behalf prior to the appointment of the trustee. Second, the rule does not apply to individual chapter 7 debtors because corporate law is not applicable in such cases. Third, former managers can appeal a bankruptcy court order "in their own right" if they qualify as "persons aggrieved." *Id.* at 1265-66.

The Tenth Circuit reaffirmed its *C.W. Mining* holding in *Bear Creek,* an involuntary corporate chapter 7 case. 35 F.4th at 1281-82. There, the circuit court affirmed the district court's ruling that only the chapter 7 trustee could appeal the conversion order on behalf of debtor and it dismissed debtor's appeal brought by its former managers and attorney.

B.R. 897, 907 (9th Cir. BAP 2011).

Although Aframian and Trustee do not dispute Homesite's right to seek conversion under § 706(a) or argue that Homesite is not a "person aggrieved" by the Conversion Order with standing to appeal, they do contest Cartwright's authority to seek conversion or to appeal the adverse order on Homesite's behalf.[7] Following the logic of their argument, if Cartwright lacks authority to bring the appeals on behalf of Homesite as its managing member, he must have also lacked authority to file the motion to convert on Homesite's behalf since he was divested of his management powers the moment the bankruptcy case was filed. Homesite counters that the argument of whether Cartwright lacked authority or standing to act on Homesite's behalf has been waived because Aframian and Trustee failed to raise it before the bankruptcy court. We agree.

No one challenged Cartwright's authority to seek conversion of Homesite's case to chapter 11 under § 706(a) at any point before the bankruptcy court. A party waives an argument relating to statutory or prudential standing if the argument was not raised in the bankruptcy court.

---

[7] We are mindful of the recent decision by the Ninth Circuit Court of Appeals in *Clifton Capital Group, LLC v. Sharp (In re East Coast Foods, Inc.)*, ___ F.4th ___, 2023 WL 3296746 (9th Cir. May 8, 2023), which casts doubt on use of the "person aggrieved" test, a prudential standing concept long-utilized in this circuit for bankruptcy appellate standing, in favor of the Article III standard of "injury in fact." We conclude that *East Coast Foods* is not applicable here. Homesite's Article III standing is not in question; it clearly suffered an injury in fact by the bankruptcy court's decision denying conversion. Rather, the issue is whether Homesite's principal had the authority to file the motion to convert and the subsequent appeal on behalf of Homesite, which does not implicate Article III standing.

*See City of Almaty v. Khrapunov*, 956 F.3d 1129, 1134 (9th Cir. 2020). Prudential standing is not jurisdictional and "can be deemed waived if not raised in the [bankruptcy] court." *See Bd. of Nat. Res. v. Brown*, 992 F.2d 937, 946 (9th Cir. 1993); *see also 461 7th Ave. Mkt., Inc. v. Delshah 461 Seventh Ave., LLC (In re 461 7th Ave. Mkt., Inc.)*, No. 20-3555, 2021 WL 5917775, at *1 (2d. Cir. Dec. 15, 2021) (because the question of whether debtor's former management lacked standing to seek a stay pending appeal on corporate debtor's behalf for an order converting case to chapter 7 was not a jurisdictional question but one of real-party-in-interest, and because the conversion order could be affirmed on other grounds, the court would not decide the issue of who had authority to seek a stay on debtor's behalf).

As a result, the argument challenging Cartwright's prudential standing for the first time on appeal has been waived, and the motion to dismiss is denied. Consequently, the motion to intervene is denied as moot. Therefore, we now review the merits of the bankruptcy court's decision with respect to the Conversion Order.

**B.    The bankruptcy court did not abuse its discretion in denying the motion to convert.**

### 1.    Legal standards for conversion from chapter 7 to chapter 11

Homesite sought to convert its case to chapter 11 under § 706(a), which allows a debtor to convert from chapter 7 to another chapter if the case has not previously been converted, and the debtor is eligible to be a debtor under

the chapter to which it is to be converted. *See* § 706(a), (d).[8] The right to convert, however, is not absolute. *Marrama*, 549 U.S. at 372. In *Marrama*, the Supreme Court concluded that a debtor's right to convert a chapter 7 case to chapter 13 is specifically limited by § 706(d). A debtor may not be eligible to be a debtor under the proposed chapter of conversion if "cause" exists to immediately dismiss the case or reconvert the case back to the chapter under which it was initially pending. *Id.* at 373-74. Bad faith is routinely held to constitute "cause" for conversion or dismissal of a chapter 13 case under § 1307(c). *Id.* at 373. "[A] debtor who acts in bad faith prior to, or in the course of, filing a Chapter 13 petition by, for example, fraudulently concealing significant assets, thereby forfeits his right to obtain Chapter 13 relief." *Id.* at 367, 373-74.[9]

Although *Marrama* involved an attempted conversion from chapter 7 to chapter 13, it applies equally to cases in which a debtor seeks to convert from chapter 7 to chapter 11. *In re Levesque*, 473 B.R. at 339. Thus, if "cause" exists to convert a hypothetical chapter 11 case under § 1112(b), the chapter 7 debtor seeking to convert to chapter 11 is ineligible for relief under that chapter within the meaning of § 706(d). "Cause" to convert or dismiss a chapter 11

---

[8] Section 706(d) provides: "Notwithstanding any other provision of this section, a case may not be converted to a case under another chapter of this title unless the debtor may be a debtor under such chapter."

[9] We recently opined that *Marrama* is still good law after *Law v. Siegel,* 571 U.S. 415 (2014) and *Nichols v. Marana Stockyard & Livestock Market, Inc. (In re Nichols)*, 10 F.4th 956 (9th Cir. 2021). *See Richards v. Marshack (In re Richards),* BAP No. CC-21-1178-LTF, 2022 WL 884593, at *5 (9th Cir. BAP Mar. 24, 2022), *appeal filed* June 15, 2022.

case includes the factors expressly listed in § 1112(b)(4), or if the debtor has engaged in "bad faith" conduct. *See Marrama*, 549 U.S. at 373-74; *Marsch v. Marsch (In re Marsch)*, 36 F.3d 825, 828 (9th Cir. 1994) (chapter 11 case, holding that filing a bankruptcy petition in bad faith constitutes cause for dismissal); *St. Paul Self Storage Ltd. P'ship v. Port Auth. of St. Paul (In re St. Paul Self Storage Ltd. P'ship)*, 185 B.R. 580, 582 (9th Cir. BAP 1995) (same).

With respect to conversion, bankruptcy courts enjoy broad discretion in determining what factual circumstances constitute "cause" under § 1112(b). *Sullivan v. Harnisch (In re Sullivan)*, 522 B.R. 604, 614 (9th Cir. BAP 2014). The test for a bad faith filing is "whether a debtor is attempting to unreasonably deter and harass creditors or attempting to effect a speedy, efficient reorganization on a feasible basis." *In re Marsch*, 36 F.3d at 828 (citing *Idaho Dep't of Lands v. Arnold (In re Arnold)*, 806 F.2d 937, 939 (9th Cir. 1986)).

The court may consider a number of factors when determining bad faith. *Arnold* adopted as indicia of a bad faith filing those factors earlier articulated in *Little Creek Development Co. v. Commonwealth Mortgage Co. (In re Little Creek Development Co.)*, 779 F.2d 1068 (5th Cir. 1986):

(1) debtor has only one asset, such as a tract of undeveloped or developed real property;
(2) the secured creditors' lien encumbers this tract;
(3) there are generally no employees except for the principals;
(4) there is little or no cash flow, and no available sources of income to sustain a plan of reorganization or to make adequate protection payments;
(5) there are few, if any, unsecured creditors whose claims are relatively small;
(6) the property has usually been posted for foreclosure because of arrearages

12

on the debt and the debtor has been unsuccessful in defending actions against the foreclosure in state court;
(7) there are allegations of wrongdoing by the debtor or its principals;
(8) debtor is afflicted with the "new debtor syndrome" in which a one-asset entity has been created or revitalized on the eve of foreclosure to isolate the insolvent property and its creditors;
(9) bankruptcy offers the only possibility of forestalling loss of the property.

*Id. at* 1072-73; *see also In re St. Paul Self Storage Ltd. P'ship*, 185 B.R. at 582-83

(applying a five-factor good faith test for filing a chapter 11 plan which

includes some of the same factors as *Arnold/Little Creek*); *Stolrow v. Stolrow's,*

*Inc. (In re Stolrow's Inc.)*, 84 B.R. 167, 171 (9th Cir. BAP 1988) (discussing the

*Little Creek* factors for determining chapter 11 dismissal for cause).

> **2. The bankruptcy court's finding of bad faith was not clearly erroneous.**

The bankruptcy court cited *Little Creek* in its decision, but proceeded to

apply *Leavitt v. Soto (In re Leavitt)*, 171 F.3d 1219 (1999), as stated in *Drummond*

*v. Welsh (In re Welsh)*, 711 F.3d 1120 (9th Cir. 2013), which concerned chapter

13 and set forth a four-factor test for determining bad faith:

(1) whether the debtor misrepresented facts in the petition or plan, unfairly manipulated the Bankruptcy Code, or filed the chapter 13 petition or plan in an inequitable manner;
(2) the debtor's history of filings and dismissals;
(3) whether the debtor only intended to defeat state court litigation;
(4) whether egregious behavior is present.

*In re Welsh*, 711 F.3d at 1129 n.45 (citing *In re Leavitt*, 171 F.3d at 1224).

After considering these factors, the bankruptcy court determined that

certain undisputed facts "overwhelmingly" supported a finding that

Homesite and Cartwright's bad faith rendered Homesite ineligible to be a chapter 11 debtor. Accordingly, conversion was denied. The court's finding of bad faith hinged on the Big A lien and the Cartwright settlement agreement.[10]

The Big A lien evidenced Homesite's manipulation. The court noted that the disclosures kept changing and were still incorrect regarding the amount of the debt, the payments made, and the consideration received by Homesite as opposed to other Cartwright entities. Cartwright had also engaged in "gamesmanship" during his Rule 2004 examination declining to answer Trustee's questions. The court found that the Cartwright entities' use of Homesite's equity to pay their individual debts was also egregious behavior.

The Cartwright settlement agreement was another example of manipulation. The court found that concealing litigation that involved estate property and resulted in a settlement that divided the property outside of the bankruptcy court was also egregious behavior. Additionally, the court found that Homesite had engaged in forum shopping. Homesite filed its bankruptcy case to avoid the denial of the TRO in the state court litigation that precipitated the bankruptcy filing. Cartwright's undisclosed litigation and resulting settlement corroborated the forum shopping finding.

Homesite argues that the bankruptcy court misapplied the *Leavitt* factors and that the record does not support a finding of bad faith as a basis

---

[10] Arguably, had the bankruptcy court applied the *Arnold/Little Creek* factors, the record supports a finding that nearly all of them were met.

to deny the motion to convert.[11] Specifically, Homesite argues that the bankruptcy court misapplied the first *Leavitt* factor when it found that Cartwright's act of encumbering Homesite's equity with the Big A lien was evidence of bad faith because it was a "manipulation of Homesite," and not a "manipulation of the Bankruptcy Code" as required by *Leavitt.* Homesite argues that, because the cross-collateralization of the Big A loan with Homesite's lots occurred before the bankruptcy, it could not have constituted a manipulation of the Bankruptcy Code. Regardless of when the cross-collateralization occurred or for what purpose, Cartwright scheduled the Big A lien as a secured debt of Homesite yet failed to provide any documentation to Trustee showing how much, if any, of the proceeds went to Homesite, and he scheduled debt owed by other entities on the loan as part of Homesite's bankruptcy. These acts were clearly a manipulation of the Bankruptcy Code.

In addition, the disclosures in the schedules kept changing and still contained incorrect information. Homesite argues there was no bad faith because the amendments were made at Trustee's insistence that they reflect

---

[11] Homesite does not argue that the bankruptcy court erred by applying the bad faith test in *Leavitt* as opposed to the bad faith test in *Arnold/Little Creek*. As long as the bankruptcy court applies a totality-of-the-circumstances test for deciding bad faith in a chapter 11 case, whether it is *Leavitt* or *Arnold/Little Creek* or another similar test, we will not reverse if its finding of bad faith is supported by the record. *See Prometheus Health Imaging, Inc. v. U.S. Tr. (In re Prometheus Health Imaging, Inc.),* BAP No. CC-14-1576-FKiKu, 2015 WL 6719804, at *4 n.4 (9th Cir. BAP Nov. 2, 2015) (citing *In re Mitchell,* 357 B.R. 142, 154 (Bankr. C.D. Cal. 2006) and noting that courts applying chapter 11 and chapter 13 bad faith tests generally consider a variety of nonexclusive factors). "The bankruptcy court is not required to find that each factor is satisfied or even to weigh each factor equally. Rather, the factors are simply tools that the bankruptcy court employs in considering the totality of the circumstances." *Id.* at *4 (cleaned up).

the value Homesite actually received from Big A. But Trustee disputed that contention when Homesite made it before the bankruptcy court. He wanted Homesite's Schedule D amended to reflect the proper allocation of the amount of encumbrance on each lot since it was not clear in the initial Schedule D.

Moreover, the first *Leavitt* factor is also satisfied where the debtor misrepresented facts in the petition or plan. The record reflects that facts were misrepresented in the petition. Homesite also fails to mention the bankruptcy court's additional finding that there was evidence that the Big A lien was a fraudulent transfer. And no amended Schedule H was ever filed to list the codebtors on the Big A loan. The bankruptcy court's finding that the Big A lien supported a finding of bad faith was not illogical, implausible, or without support in the record.

Homesite next argues that the bankruptcy court incorrectly interpreted the Cartwright settlement agreement as disposing of Homesite's property or property of the bankruptcy estate in violation of the automatic stay. Homesite argues that the settlement was a legitimate attempt to divide Cartwright's net gains from any chapter 7 distribution between Cartwright and Payan, not an attempt to exercise control over and divvy up the estate's property in violation of the automatic stay. We disagree.

The Cartwright settlement agreement says that Cartwright will "attempt to litigate an action" against Aframian regarding Homesite's property. It further says that if Cartwright should prevail, "any proceeds from

16

any such action" are subject to distribution between Cartwright and Payan. Contrary to Homesite's position, the agreement is not premised on Homesite being out of bankruptcy, and it is not limited to mere equity transfers or net recoveries from the estate. Instead, it provides for a sharing of gross proceeds if Cartwright prevails. There is no reference to "net" proceeds after payments of creditors which could support an intent to affect only equity interests.

Thus, the undisclosed, postpetition Cartwright settlement agreement which attempted to exercise control over estate property and violated the automatic stay under § 362(a)(3) was both a manipulation of the Bankruptcy Code and egregious. The bankruptcy court's finding that it supported a finding of bad faith was not illogical, implausible, or without support in the record.

Next, Homesite takes issue with the bankruptcy court's finding that Cartwright filed Homesite's bankruptcy case to avoid denial of the TRO and argues that pending litigation affected by a bankruptcy filing is insufficient, without more, to support a finding of bad faith. First, we disagree with Homesite's statement of the law in the Ninth Circuit. Filing a bankruptcy case to defeat or delay state court litigation, even if that is not the only purpose for the filing, can constitute bad faith. *See In re Khan*, 846 F.3d at 1066; *Eisen v. Curry (In re Eisen)*, 14 F.3d 469, 470-71 (9th Cir. 1994); *Chinichian v. Campolongo (In re Chinichian)*, 784 F.2d 1440, 1445 (9th Cir. 1986). Second, Cartwright admitted that he filed Homesite's bankruptcy case to avoid the consequences of denial of the TRO. The bankruptcy court rejected as "sophistry"

17

Cartwright's later assertion that he filed the case to protect the equity in Homesite's lots for creditors.

In any case, the bankruptcy court's finding of forum shopping was supported by more than the desire to avoid denial of the TRO. The court also found that Cartwright's undisclosed litigation resolved by application of Homesite's equity also evidenced forum shopping. The implication here is that the bankruptcy case was filed to take advantage of the automatic stay while Cartwright pursued his and Homesite's interests in another court. *See In re St. Paul Self Storage Ltd. P'ship,* 185 B.R. at 583 (forum shopping constitutes bad faith).

The remainder of Homesite's arguments challenge what it argues are other "bad faith findings" the bankruptcy court made to support denial of the motion to convert. These include: (1) Homesite's earlier bankruptcy filing and use of a different EIN in that case; (2) Cartwright might not be the legal managing member of Homesite; (3) Homesite would not investigate and object to the Aframian lien; (4) whether Homesite has an accountant or any bank accounts; and (5) the value of the lots. Homesite's argument as to these other alleged bad faith findings was raised at the conversion hearing while discussing the bankruptcy court's tentative ruling. The bankruptcy court stated repeatedly that it did not rely on any of these facts for its finding of bad faith; they were simply background, and some of them were undisputed. The court made this statement again in its order denying reconsideration. The court was clear that its bad faith finding was limited to the contents and effect

of the undisclosed Cartwright settlement agreement and its related litigation, and Homesite's lack of disclosure and transparency about the Big A lien. Therefore, we need not review facts that were not part of, nor material to, the bankruptcy court's finding of bad faith.

Homesite and Cartwright's conduct supports the bankruptcy court's finding that such acts, taken together, revealed bad faith, and therefore Homesite was ineligible for chapter 11. Accordingly, the bankruptcy court did not abuse its discretion in denying the motion to convert.

## CONCLUSION

For the reasons stated above, the motion to dismiss is DENIED, the motion to intervene is DENIED as moot, and the Conversion Order is AFFIRMED.